**CULVER–UNION TOWNSHIP AMBULANCE SERVICE; Marvalene Leffert, as Trustee of Union Township, Marshall County, Indiana; Bernard Bursart, as President of the Culver Town Board, Appellants–Defendants,**

v.

**Barbara STEINDLER, as Executrix of the Estate of Rolin G. Popplewell, Appellee–Plaintiff.**

No. 50A04–9109–CV–306.

Court of Appeals of Indiana, Fourth District.

April 8, 1993.

---

Steven P. Polick, Knight Hoppe Fanning & Knight, Ltd., Schererville, for appellants-defendants.

Roger A. Weitgenant, Blachly Tabor Bozik & Hartman, Valparaiso, for appellee-plaintiff.

SULLIVAN, Judge.

Defendants–Appellants, Culver–Union Township Ambulance Service ("Culver–Union"), Marvalene Leffert, and Bernard Bursart appeal the denial of their Motion to Dismiss Plaintiff–Appellee's, Barbara Steindler's ("Executrix"), Complaint and the denial of their Motion for Judgment on the Pleadings. We affirm in part and reverse in part.

Appellants present several issues for our review, which we restate as follows:

I. Whether the trial court appropriately denied the Motion to Dismiss and the Motion for Judgment on the Pleadings on the count of Executrix's complaint which alleged wrongful death as a result of negligence on the part of the defendants;

II. whether the facts pleaded in Executrix's complaint give rise to an action under 42 U.S.C. § 1983.

Rolin G. Popplewell died in 1988. Executrix filed this action seeking recovery. Count I charged that the negligent acts and/or omissions of Culver–Union, Bursart, as President of the Culver Town Board, and Leffert, as Trustee of Union Township (by and through their ambulance service personnel), caused the wrongful death of decedent. Executrix alleged that the ambulance personnel "negligently failed to take adequate steps to respond" to decedent's emergency situation. Failure of the ambulance personnel allegedly included inefficient appraisal of decedent's condition, failure to respond quickly and efficiently to the emergency, failure to allow trained medical personnel to respond to decedent and failure to transport decedent to a medical facility soon enough. It was alleged that Town of Culver and Union Township are liable for the acts and omissions of the emergency personnel.

Count II was brought pursuant to 42 U.S.C. § 1983. It charged that various policies adopted by Appellants constituted a reckless indifference to decedent's constitutionally guaranteed "right to live."

Culver–Union and Bursart answered the complaint denying all wrongdoing. Leffert filed a Motion to Dismiss Plaintiff's Complaint, arguing, inter alia:

(a) Plaintiff's complaint did not state a *prima facie* case; it alleged no damages;

(b) Plaintiff failed to allege a special duty owed to decedent by the defendant, a political subdivision; and

(c) Plaintiff had no recognizable claim under § 1983.

Culver–Union and Bursart joined in Leffert's Motion to Dismiss.

Subsequently, Culver–Union and Bursart filed a Motion for Judgment on the Pleadings, arguing that Count II of the complaint failed to state a claim for which relief could be granted, because the action under § 1983 did not survive the death of decedent. Leffert joined the Motion for Judgment on the Pleadings. After a full hearing upon the merits, the trial court denied both motions.

Culver–Union, Bursart and Leffert filed a joint motion in the trial court for certification of the matter for interlocutory appeal. They also filed a Joint Petition for Leave to Appeal. Both the joint motion and the joint petition were granted.

I

■ The appellants attack the ruling which denied their Motion to Dismiss and their Motion for Judgment on the Pleadings with respect to the count alleging negligence which caused the death of the Executrix's decedent. They contend that because Executrix did not specify whether decedent had next of kin or other dependents, the claim fails under the wrongful death statute. Indiana's Wrongful Death Act allows for a damage award even absent next of kin, albeit only "the total of the necessary and reasonable value of such hospitalization or hospital service, medical and surgical services, such funeral expenses, and such costs and expenses of administration, including attorney fees."

I.C. 34–1–1–2 (Burns Code Ed.1986). It is possible, whether decedent left next of kin or not, for Executrix to recover under Indiana's Wrongful Death Act. The claim will not fail for lack of more specific pleading.

■ Appellants next argue that they had no duty to decedent and thus cannot be held liable for his death under a theory of negligence. Appellants claim that they had no duty because there was no special relationship between decedent and the ambulance personnel and that they had only a general duty to decedent. If the duty which a public authority imposes upon a public agent is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public not an individual injury, and must be redressed, if at all, in some form of public prosecution. *Simpson's Food Fair, Inc. v. City of Evansville* (1971) 149 Ind.App. 387, 272 N.E.2d 871, 873, *trans. denied.* On the other hand, if the duty is a duty to an individual, then a neglect to perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages. *Id.* To be private, a duty must be particularized to an individual. *Id.* 272 N.E.2d at 874.

■ Executrix alleges in her complaint that Appellants breached a special duty to decedent once they arrived at the scene. At what point the duty actually attached, or whether that duty was breached are mixed questions of law and fact to be determined by the trial court. In *Gary Police Dept. v. Loera* (1992) 3d Dist.Ind.App., 604 N.E.2d 6, 7, the court stated:

"The duty to exercise care for the safety of another arises as a matter of law out of some relationship existing between the parties, and it is the province of the court to determine whether such relation gives rise to a duty. *Harper v. Guarantee Auto Stores* (1989), Ind.App., 533 N.E.2d 1258, 1261. However, factual questions may be interwoven with the determination of the existence of a relation, rendering the existence of a duty a mixed question of law and fact, ultimately to be resolved by the fact-finder. *Id.* at 1261–62."

Thus, by alleging the elements of negligence, Executrix met her pleading burden sufficiently to escape a motion to dismiss and a motion for judgment on the pleadings. We cannot conclude, as a matter of law, that Executrix's allegations of negligence do not contemplate some set of facts which would give rise to relief. The issue of whether the facts are sufficient to demonstrate a special duty cannot be resolved upon a motion to dismiss or a motion for judgment on the pleadings. We affirm the trial court's denial of the motion to dismiss and the motion for judgment on the pleadings on the wrongful death negligence count.

### II.

With respect to the second issue, we must determine whether the facts pleaded in Executrix's complaint give rise to an action under § 1983. Indiana requires only notice pleading. As stated in *Lincoln National Bank v. Mundinger* (1988) 3d Dist. Ind.App., 528 N.E.2d 829, 835–36:

"The term 'notice pleading' is a description of the requirements of T.R. 8(A), which states that a complaint need only contain:

'(1) A short and plain statement of the claim showing that the pleader is entitled to relief, and

(2) A demand for the relief to which he deems himself entitled.'

Under notice pleading, all that is required for a complaint to defeat a T.R. 12(B)(6) motion to dismiss is a 'clear and concise statement that will put the defendants on "notice" as to what has taken place and the theory that plaintiffs plan to pursue in their attempt for recovery.' "

*See also Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit* (1993) —— U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517.

When reviewing a Motion to Dismiss or a Motion for Judgment on the Pleadings, we apply the standard set forth in *Anderson v.*

*Anderson* (1979) 2d Dist.Ind.App., 399 N.E.2d 391, 406:

> "[T]he test to be applied when ruling on a T.R. 12(B)(6) motion or a T.R. 12(C) motion that raises the defense of failure to state a claim upon which relief can be granted is whether, in the light most favorable to the non-moving party and with every intendment regarded in his favor, the complaint is sufficient to constitute any valid claim. [Citation omitted.] In applying this test the court may look only at the pleadings, with all well-pleaded material facts alleged in the complaint taken as admitted, supplemented by any facts of which the court will take judicial notice."

Because the trial court's order on the motions is a general order, we have "a duty to sustain the action of the trial court if it can be done on any legal ground on the record." *State v. Mileff* (1988) 4th Dist.Ind. App., 520 N.E.2d 123, 125.

■ The United States Supreme Court established a two-part test to determine whether a plaintiff who asserts a § 1983 claim against a municipality has met the burden of stating a claim upon which relief can be granted: (1) whether plaintiff's harm was caused by a constitutional violation, and, if so (2) whether the city is responsible for that violation. *Collins v. City of Harker Heights, Tex.* (1992) —— U.S. ——, ——, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261.[1] We must examine Executrix's complaint for relief under § 1983, to determine whether it will permit a recovery *under any set of facts. Id.*

### A.

We first discuss whether there was a viable claim of a constitutional violation. Executrix's constitutional claim rests entirely upon the Due Process Clause of the Fourteenth Amendment.[2] It is for violations of constitutional rights that § 1983 authorizes redress. That section is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution that it describes. Accordingly, Appellants, relying upon *Deshaney v. Winnebago County Department of Social Services* (1989) 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249,[3] argue that there is no general duty required of a municipality under the Due Process Clause to remove someone from plight of danger and to effect rescue. Thus, they contend, there was no violation of due process by the ambulance personnel. Appellants rely upon decisions of the United States Supreme Court in support of their proposition that § 1983 imposes liability for violations of rights protected by the United States Constitution, not for violations of duties of care arising solely out of tort law.

■ Specifications 15 and 16 of Count II of plaintiff's complaint allege that the policy of the municipality to limit life-saving devices "to a selected few individuals" demonstrates reckless indifference to decedent's rights. We appreciate the implication of today's decision to the effect that

1. We must examine the language of § 1983 in order to determine what types of acts give rise to a cause under the statute:

   "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. Executrix alleged in her complaint that the decedent has a "constitutionally guaranteed right to live" and that "defendants violated that right under color of state law by failing to

properly administer emergency care." Record at 13. The Due Process Clause of the Fourteenth Amendment states: "nor shall any State deprive any person of life, liberty, or property, without due process of law."

3. In *Deshaney*, the issue was whether the State had a duty to protect against due process violations inflicted by private actors. The mother of a child who had been beaten by the father brought a civil rights action against social workers and local officials who had received complaints that the child was being abused by the father but had not been removed from the father's custody. The Court held that nothing in the Due Process Clause requires the State to protect life, liberty, and property of its citizens against invasion by private actors.

plaintiff's claim stretches the intendment of § 1983 to, if not beyond, the limits of judicial cognizance. Nevertheless, we are unable to conclude that in this regard the allegations, *as a matter of law,* do not permit establishment of any set of facts which would give rise to relief. *State v. Rankin* (1973) 260 Ind. 228, 294 N.E.2d 604; *Union Federal Savings Bank v. Chantilly Farms, Inc.* (1990) 1st Dist.Ind. App., 556 N.E.2d 9; *Mills v. American Playground Device Co.* (1980) 2d Dist.Ind. App., 405 N.E.2d 621.

The allegations here considered are, in the context of a § 1983 claim, substantively different than the other allegation of Count II which concerns the "hiring [of] non-qualified emergency medical personnel who cannot use [the life saving devices with which the municipality's ambulances are equipped]". Record at 13.

In our view, *Collins v. City of Harker Heights, Texas, supra,* —— U.S. ——, 112 S.Ct. 1061, leads to the result which we reach here. *Collins* holds that a claim which asserts a cognizable constitutional deprivation as a result of "execution of a municipal policy" gives rise to a viable § 1983 dispute. Specifications 15 and 16 of Count II meet this test, albeit minimally so.

Our case may not be fairly distinguished from *City of Canton, Ohio v. Harris* (1989) 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412, upon grounds that in *Canton* the validity of § 1983 claim depended upon the status of plaintiff as being a prisoner within the custody of the municipality. Neither, does our case fall within the holding of *Deshaney v. Winnebago County Department· of Social Services, supra. Deshaney* observed that "[a]s a general matter, a State is under no constitutional duty to provide substantive services for those within its border." 489 U.S. at 196, 109 S.Ct. at 1003 (quoting *Youngberg v. Romeo* (1982) 457 U.S. 307, 318, 102 S.Ct. 2452, 2458, 73 L.Ed.2d 28). To this extent, we agree with Judge Chezem's position in dissent that a municipality is not constitutionally required to provide medical services to the general public. We know, however, that the generality noted in *Deshaney* is not applicable in every situation. *See Youngberg v. Romeo, supra,* (mental health .patient entitled to minimally adequate training). The general principle was considered in *Deshaney* in the context of a claim against the county for a constitutional deprivation inflicted upon the victim by a private actor. Such is not our situation. Although *City of Canton, supra,* and *Youngberg, supra,* involved custodial circumstances, the situation before us is not altogether dissimilar.

In the case before us, in its regular course of business, the municipality undertook to render ambulance service to the decedent Popplewell and was actually engaged in that undertaking. As a result of that affirmative undertaking, it is alleged that the targeted municipal policy was the cause of constitutional deprivation to decedent. The allegations in Specifications 15 and 16 with respect to the undue limitation of life saving services are sufficient to insulate the § 1983 claim from T.R. 12(B)(6) dismissal and from a T.R. 12(C) judgment on the pleadings.

Our decision in this regard derives substantial support from *Ross v. United States* (1990) 7th Cir., 910 F.2d 1422, 1429 *et seq.* In that case a § 1983 action survived a motion to dismiss when the county policy forbidding private rescue efforts resulted in the drowning death of the victim. *Cf. Andrews v. Wilkins* (1991) D.C.Cir., 934 F.2d 1267 (involving police and private involvement in an ineffective rescue from drowning).

Our determination is not voiced without some hesitance. As earlier stated, this claim falls at, if not outside, the valid perimeters of § 1983. Nevertheless, with regard to the subject matter of the complaint, it is the view of the majority herein that the solution does not lie within the remedies afforded by 12(B)(6) or 12(C).

This resolution of the factual allegations contained in the § 1983 complaint, is not, however, determinative of the propriety of the trial court's rulings.

## B.

Appellants argue that Executrix's claim under 42 U.S.C. § 1983 did not survive the death of Popplewell, and that therefore their Motion to Dismiss or Motion for Judgment on the Pleadings should have been sustained as to that count of the complaint.

The complaint asserts that Popplewell's death was occasioned by the carrying out of a policy limiting the use of life-saving devices in derogation of Popplewell's constitutional "right to live." It is unclear whether the thrust of the complaint focuses upon the actual death or upon Popplewell's right to live in the sense that it asserts a personal injury unrelated to the death itself. In either event, the § 1983 claim is not cognizable.

■ Actions brought under § 1983 are considered most analogous to state claims for personal injury, and are treated accordingly for purposes of limitations upon the time for filing of the complaint. *Wilson v. Garcia* (1985) 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254. Upon first appearance, such classification, in the case before us, defeats the § 1983 claim because personal injury claims do not survive death unless the death is occasioned by causes other than those alleged as the basis for the personal injury claim. I.C. 34–1–1–1 (Burns Code Ed.Supp.1991). In this light, Executrix understandably urges that we consider the claim to be in the nature of a wrongful death claim. Admittedly, a pleader has the dilemma of asserting a "personal injury" claim which would arguably survive, in which case he would be hard pressed to allege the egregious constitutional deprivation which led to death while at the same time claiming that the death was from causes other than the "personal injury" giving rise to the claim.[4]

■ Executrix is aware of the obstacle to such classification of her claim in that she concedes that except as to medical, hospital, funeral and burial expenses, recovery for wrongful death inures solely to the benefit of a widow, dependent children or dependent next of kin. I.C. 34–1–1–2. Executrix simply cannot avoid the clear limitations of the wrongful death statute. *See Thomas v. Eads* (1980) 1st Dist.Ind. App., 400 N.E.2d 778.[5]

The § 1983 claim does not make claim for any expenses such as set forth in the statute, nor for the benefit of any dependent. To the contrary, the claim is clearly and unmistakably directed solely to Popplewell's own "right to live", a right wholly personal to the decedent, a violation of which would necessarily constitute a personal injury. By reason of Executrix's own characterization of the claim, it must be categorized as are other § 1983 actions—a personal injury claim. Thus *Wilson v. Garcia, supra* and its various permutations must be held applicable.[6]

---

**4.** In *Berry v. City of Muskogee, Okl.* (1990) 10th Cir., 900 F.2d 1489, the decedent was murdered by fellow jail inmates whom the victim had implicated in the crime. The court somewhat tortuously concluded that a jury might reasonably conclude that the City's "reckless indifference" to the victim's safety was the moving force in bringing about the death. In this way, the complaint was viewed to allege a cognizable civil rights claim. This, however, placed the court in the position of facing a barrier to "full" recovery in the form of the limited damages permissible in a survival action. The court, in an effort to assist, merely engrafted the more remunerative damage provisions from the Oklahoma wrongful death statute. *See also Cortes–Quinones v. Jimenez–Nettleship* (1988) 1st Cir., 842 F.2d 556, *cert. denied*, 488 U.S. 823, 109 S.Ct. 68, 102 L.Ed.2d 45. We do not deem it our prerogative to be so innovative and creative in our analysis either of federal law or of Indiana law.

**5.** Lord Campbell's Act in 1846 rejected the English common law proscription against wrongful death actions. It created a new and independent cause of action for a statutorily designated beneficiary of the decedent. Because such wrongful death actions, and such as presently exists in Indiana, were focused upon the harm to the beneficiary's interests and vested the action in the survivor, the cause of action is not, as has been claimed by some commentators, "still the one the decedent would have had at the time of his death had the wrongful act not resulted in death." Steinglass, *Wrongful Death Actions and Section 1983*, 60 Ind.L.J. 559, 572–573. The one may perhaps be deemed a substitute for the cause of action lost by the decedent but it is not the same claim.

**6.** Executrix cannot take refuge in the language of I.C. 34–1–1–1(a) (Burns Code Ed.Supp.1992) which states: "All causes of action shall survive and may be brought, notwithstanding the death

We acknowledge that application of a survival statute, as here, does not precisely equate with application of a statute of limitations, as in *Wilson v. Garcia, supra.* Nevertheless, the concept of analyzing a § 1983 claim in terms of the most closely analogous state claim, i.e., a claim for personal injury, cannot reasonably be faulted in this situation. *Bennett v. Tucker* (1987) 7th Cir., 827 F.2d 63.

As a personal injury claim, the claim here must be rejected because, as earlier noted, the alleged cause of death was not different from the alleged personal injury. In the case before us the injury to Popplewell's "right to live", and the "wrongful death" itself are inextricably intertwined. They cannot be legitimately separated so as to create a survivable cause of action. To hold that the law may countenance a personal injury to one's "right to live" unrelated to the death itself would constitute sophistry of the highest degree.[7] The claim, therefore, did not survive.

Executrix argues that non-survivability of the claim in this instance is contrary to the purpose and thrust of § 1983 and that therefore application of the Indiana survival statute is "inconsistent" therewith. In such instances, causes of action have been held to have survived. Nevertheless, we cannot ignore the fact that Executrix has brought her claim in an Indiana court and has not challenged the constitutionality of the survival restrictions in our statute.

On the other hand, the Executrix's position is buttressed by repeated acknowledgement by courts from many jurisdictions that the thrust and purpose of § 1983 is twofold: (1) to provide adequate compensation to those persons who suffer the violation of their own constitutional rights; and (2) to deter future similar violations. In this sense, non-survivability statutes have been deemed inconsistent with federal law, at least to the extent that under state law a claim is barred when the illegal conduct causes the death.

Obviously, when the injured person is deceased he cannot be compensated. The first of the stated purposes is thus incapable of fulfillment. Permitting heirs or beneficiaries to benefit does not accomplish the same goal. The second stated purpose, deterrence, is viewed as frustrated if non-survivability serves as an encouragement to willful violators of personal constitutional rights to make sure that their victims die rather than merely sustain personal injury. This approach is too facile for the realities of situations which give rise to various causes of action. *See Carlson v. Green* (1980) 446 U.S. 14, 50, 100 S.Ct. 1468, 1488, 64 L.Ed.2d 15 (Rehnquist, J., dissenting).[8] The rationale is of some use only if the actor is consciously bent upon killing the victim. In such cases there are other more clear deterrents in existence, i.e., penalties which might be imposed for murder or manslaughter. Furthermore, the monetary nature of the deterrent inherent in a civil rights action misses the mark in virtually all such situations. The violators themselves are not often wealthy individuals to whom a significant damage award would be terribly meaningful.

---

of the individual who is entitled or liable in such an action...." The limiting proviso as to medical, hospital, funeral and burial expense and as to dependent's rights belies the all-inclusive interpretation proffered by Executrix, and which would permit of no exception. Were such the proper interpretation, the General Assembly would have deleted all language following the portion quoted above. More importantly, however, Executrix would have us ignore the segment of the statute which clearly states that wrongful death actions survive "only to the extent provided [in the statute itself]".

**7.** This is not to say that there has not been a personal injury occasioned to the individual who dies. *See Hill v. State* (1989) 2d Dist.Ind.

App., 535 N.E.2d 153. It is to say merely that the cause of the personal injury and the cause of death are identical so as to preclude survival of an action for the injury itself. Again it must be noted that the constitutional right allegedly violated here is the "right to live", not a right, if any such exists, to medical treatment or to be free from the pain and suffering of a heart attack.

**8.** *Carlson v. Green* was a damage action brought directly against federal prison officials under the Constitution and not as a § 1983 action. The "inconsistency" provision of § 1988 was therefore not implicated. *See Robertson v. Wegman, infra.*

Be that as it may, the seminal U.S. Supreme Court case of *Robertson v. Wegmann* (1978) 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 held that states might validly create some limitations upon § 1983 actions and recoveries without necessarily being inconsistent with federal law.[9] Although the decision did so in the context of a case in which Robertson's pre-trial death was unrelated to the constitutional deprivations which gave rise to the § 1983 suit, state-imposed impediments to the full sweep of § 1983 actions were recognized. The court, speaking through Justice Marshall, held that the "inconsistency with federal law" test is not met merely because the state statute causes the claimant to lose the litigation. 436 U.S. at 593, 98 S.Ct. at 1996.

More to the point, however, is our determination today that the Indiana survival statute is not "inconsistent with the Constitution and statutes of the United States". 42 U.S.C. § 1988. I.C. 34–1–1–1 may be not wholly consistent with the perceived, if not acknowledged, purpose of federal law in the form of § 1983; but the law itself is silent with respect to what limitations states may place upon § 1983 claimants. The Indiana non-survival provision is therefore not "inconsistent" with § 1983.

If Congress wished to prohibit state abatement statutes in the civil rights area it could certainly pass legislation to that effect. Congress has not chosen to articulate in federal law any prohibition against non-survivability as contained within the Indiana survival statute. We are not disposed to create such an inconsistency and to then wrestle it into submission.

As noted by then Justice Rehnquist, concurring in *Burnett v. Grattan* (1984) 468 U.S. 42 at 59, 104 S.Ct. 2924 at 2934, 82 L.Ed.2d 36, if Congress had intended uniformity of statutes of limitation as to § 1983, actions against local or state entities, it could do so. He observed, however, "that Congress has seen no need to establish a uniform approach" in § 1983 actions.

He further noted that "a state statute of limitations can still be consistent with federal law notwithstanding the fact that the particular statute of limitations applies only to a particular class of claims cognizable under a federal civil rights statute, or involves a particular class of parties." 468 U.S. at 59, 104 S.Ct. at 2934. So it is with respect to survival of actions statutes.

I.C. 34–1–1–1 is clear and unambiguous upon its face with respect to Executrix's § 1983 claim. That claim did not survive the death of Mr. Popplewell. For this reason, as to the § 1983 complaint, the trial court's rulings upon the Motion to Dismiss and upon the Motion for Judgment on the Pleadings were erroneous and must be reversed.

The ruling of the trial court is affirmed with respect to Count I of the complaint alleging negligence upon the part of defendants. Although Judge Chezem and the author of this opinion disagree as to rationale therefor, the cause is remanded to the trial court with instructions to grant the Motion to Dismiss or the Motion for Judgment on the Pleadings as to the § 1983 claim in Count II of the complaint.

MILLER, J., concurs as to Parts I and II(A) and dissents as to Part II(B) and files separate opinion.

CHEZEM, J., concurs in result and files separate opinion as to Part II.

MILLER, Presiding Judge, concurring in part and dissenting in part.

The majority's opinion is correct up to Issue II, part B. However, it finds that a 42 U.S.C. § 1983 claim does not survive the death of Popplewell because the claim is barred by I.C. 34–1–1–2, the Indiana wrongful death survival statute. The majority errs by relying on a series of cases which find that § 1983 actions are categorized as "a personal injury claim," but fails to see that all of these cases involved state statutes of limitations questions. In these cases, the question was: Which state stat-

---

9. Other limitations and impediments to § 1983 actions exist and are readily applied, e.g., immunity of some officers, rejection of punitive dam-

ages. *See* Steinglass, *Wrongful Death Actions and Section 1983, supra,* 60 Ind.L.J. at 608 *et seq.*

ute of limitations applied in a § 1983 case? Federal courts almost uniformly held that, because § 1983 contains no statute of limitations and because a § 1983 claim is similar to a personal injury claim, state statutes of limitations pertaining to personal injury actions applied. In the instant case, there is no statute of limitations question, rather the question is: Can a state wrongful death statute bar a federally created cause of action under § 1983? The answer is no.

The controlling law in this section is a 7th Circuit case, *Bell v. City of Milwaukee* (7th Cir.1984), 746 F.2d 1205. In *Bell*, the decedent's siblings brought an action for themselves, decedent's estate, and the estate of decedent's father for the wrongful and fatal shooting of decedent and a subsequent cover-up by the various defendants. The jury awarded decedent's estate $100,-000 in compensatory damages. The court examined the Wisconsin wrongful death statutes and noted that neither statute, like Indiana's, permitted recovery for loss of the decedent's life itself. The court then held that Wisconsin's restrictive damages limitation was inconsistent with the policies underlying § 1983, especially its deterrence function. The killing itself was the unconstitutional act, an act that should be deterred. Thus, the decedent's estate could not be precluded by state law from recovering damages in a federally created cause of action for the loss of his life.

As the Fifth Circuit observed in *Brazier v. Cherry* (5th Cir.1961), 293 F.2d 401, *cert. denied sub nom.* 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136, "it defies history to conclude that Congress purposely meant to assure to the living freedom from such unconstitutional deprivations, but that, with like precision, it meant to withdraw the protection of civil rights statutes against the peril of death." *Id.* at 404. A similar result was reached by the Tenth Circuit in *Berry v. City of Muskogee* (10th Cir.1990), 900 F.2d 1489, analyzing the affect of Oklahoma survival law on § 1983 actions.

In summary, it is well settled that a § 1983 claim, a federally created cause of action, cannot be abrogated by a state sur-

vival statute. Therefore, the § 1983 claim should still go forward.

CHEZEM, Judge, concurring in result.

I respectfully disagree with the basis upon which the majority reaches its conclusion as to Issue II. I do not agree that a claim exists under 42 U.S.C. § 1983. The majority put forth the two-part test relied upon by the United States Supreme Court which determines whether a plaintiff who asserts a § 1983 claim against a municipality has met the burden of stating a claim upon which relief can be granted. *Collins v. City of Harker Heights, Tex.* (1992), —— U.S. ——, ——, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261. The first element of the test asks whether plaintiff's harm was caused by a constitutional violation. If this element of the test is not met, Executrix's complaint for relief under § 1983, *as a matter of law*, will not withstand the motion to dismiss or the motion for judgment on the pleadings *under any set of facts*. *Id.*

The majority correctly notes that § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution that it describes." *Maj. Op., supra*. We must therefore look directly to the Constitution to determine whether Appellants owed decedent a constitutional duty.

The most familiar office of the Due Process Clause is to provide a guarantee of fair procedure in connection with any deprivation of life, liberty, or property by a State. It is unclear from the face of the complaint whether Executrix alleges a substantive or procedural violation of due process. However, the "process" that the Constitution guarantees in connection with any deprivation of liberty includes a continuing obligation to satisfy certain minimal custodial standards. *Id.* at 200. Violation of the rights of a patient who is confined by the State in either a prison or mental facility could rise to the level of a procedural due process violation. Procedural due process is designed to protect those persons whose liberty has been involuntarily deprived by the State. *Collins*, —— U.S. at ——, 112 S.Ct. at 1069. Providing medical services to the general public

is not a *procedural* due process requirement of any municipality. *Id.* Accordingly, we are limited in our analysis to substantive due process.

Consequently, the issue is whether Executrix's complaint for relief under § 1983 may be grounded upon a claim of substantive due process: whether citizens who are not involuntarily confined by the State have a substantive constitutional right to municipally-provided medical services. If there is no such right, a claim under § 1983 cannot stand, regardless of whether a municipal policy limiting life saving devices "to a selected few individuals" demonstrates reckless indifference to a decedent's rights. "The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this [substantive due process] field." *Id.* at ——, 112 S.Ct. at 1068.

The majority concedes that *Collins* stands for the proposition that "a claim which asserts a cognizable constitutional deprivation as a result of "execution of a municipal policy" gives rise to a viable § 1983 dispute." *Maj. Op., supra.* There must be a *cognizable constitutional deprivation.* I agree with the majority that the generality noted in *Deshaney* is not applicable to every situation. For example, in situations where procedural due process protection attaches, as with involuntarily-confined inmates or mental patients, *Deshaney* does not apply.

However, it is clear that Executrix's claim cannot fall under the penumbra of a procedural due process violation.[1] The Due Process Clause "is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop v. Wood* (1976), 426 U.S. 341, 350, 96 S.Ct. 2074, 2080, 48 L.Ed.2d 684. Nor, as a general rule, does a State have a constitutional duty to provide substantive services for those within its border. *Youngberg v. Romeo* (1982), 457 U.S. 307, 319, 102 S.Ct. 2452, 2460, 73 L.Ed.2d 28; *Harris v. McRae* (1980), 448

U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784. Unless we are willing to expand the concept of substantive due process "beyond the limits of judicial cognizance," we cannot say that Executrix's claim falls under the protection of substantive due process.

Executrix's claim is analogous to a state law tort claim: Appellants may have breached their duty of care through negligent medical care. Because the Due Process Clause "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society," *Daniels v. Williams* (1986), 474 U.S. 327, 332, 106 S.Ct. 662, 665, 88 L.Ed.2d 662, the Due Process Clause should not be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law. *Collins,* —— U.S. at ——, 112 S.Ct. at 1070.

Because there was no constitutional violation, the claim asserted under § 1983 cannot be sustained on any legal ground in the record. I would reverse the trial court's decision to deny Appellant's motion to dismiss on the § 1983 claim. It is therefore unnecessary to discuss whether the § 1983 claim survives the death of decedent.

---

1. The majority relies upon *Ross v. United States* in support of and cites *Andrews v. Wilkins* in relation to its proposition that Executrix's claim should survive a motion to dismiss. It should be noted that these cases from separate circuits demonstrate differing outcomes on similar facts. The United States Supreme Court settled the split among the circuits in 1992. *Collins* is dispositive of the issue of whether a § 1983 claim can withstand a motion to dismiss.