**Susan TRACY, as Special Administrator of the Estate of Steven J. Tracy, For and on Behalf of the ESTATE OF Steven J. TRACY, Plaintiff,**

v.

**Stephan BITTLES, Individually and as a Law Enforcement Officer for the City of Lafayette, Indiana; City of Lafayette, Indiana; Police Department of the City of Lafayette, Indiana, Board of Public Works and Safety of the City of Lafayette, Indiana, Defendants.**

No. 4:92cv53AS.

United States District Court,
N.D. Indiana,
Lafayette Division.

April 23, 1993.

Mark Small, Indianapolis, IN, Caroline B. Briggs, Flora, IN, for plaintiff.

James S. Stephenson, Caren L. Pollack, Michael R. Morrow, Indianapolis, IN, for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### I. Introduction and Facts

This is a civil action brought by Susan Tracy, Special Administrator of the estate of Steven Tracy. This is an action brought under 42 U.S.C. § 1983 wherein it is alleged that the decedent, Steven Tracy, was shot and killed by one of the above named defendants. The plaintiff alleges that the shooting constituted an excessive and unreasonable use of force and that such shooting deprived Steven Tracy of life and liberty without due process of law as guaranteed by the Fourteenth Amendment, and that such seizure was without probable cause to believe that Steven Tracy had committed a forcible felony and would cause serious future harm to other persons in violation of the Fourth Amendment. The plaintiff also has two state tort claims, one of which sounds in negligence. A pretrial conference was held in open court in Lafayette, Indiana on February 19, 1993, and the court instructed the parties to file their respective briefs by March 8, 1993.

In the Complaint, the plaintiff maintains that Officers Stephan Bittles and Paul Lawson arrived at the Tracy residence on the corner of 9th and Fulton Streets in Lafayette, Indiana. When the Officers arrived, the decedent, Steven Tracy, was in the open on or near Fulton Streets near the side of the home. Apparently, the decedent had a B–B gun in his possession at the time. The plaintiff indicates that Officer Lawson was behind a police car and Officer Bittles was behind a building adjacent to Fulton Street at the time of the incident. The court is obviously not being apprised of all the details because the next fact is "Bittles shot and killed Tracy." To this fact, the plaintiff adds that Bittles had previously shot and killed another man approximately seven months prior to the above-mentioned incident. This is the full extent of the details that have been imparted to this court.

### II. Rule 12(b)(6)

By moving under Fed.R.Civ.P. 12(b)(6) for dismissal, the defendant asserts that even assuming the plaintiff's allegations are true, the complaint fails to state a claim upon which relief can be granted. This rule contains only one of several "filters" used by the courts to separate "those suits that should receive plenary consideration from those that should not." *Gomez v. Illinois State Bd. of Educ.,* 811 F.2d 1030, 1039 (7th Cir.1987). The rule's capacity to save the parties' and the court's resources is obvious.

However, this court must be especially careful when faced with a motion for dismissal. The court should accord the plaintiff's complaint a reasonably tolerant reading, because

the dismissal of the suit under 12(b)(6) could preclude another suit based on any theory that the plaintiff might have advanced on the basis of the facts giving rise to the first action.

*Id.* (citing, *American Nurses' Association v. State of Illinois,* 783 F.2d 716, 726–27 (7th Cir.1986)). *See also, Wright v. Bosch Trucking Co.,* 804 F.Supp. 1069, 1071 (C.D.Ill. 1992); *Stewart v. RCA Corp.,* 790 F.2d 624, 632 (7th Cir.1986). As stated by the *Stewart* court, a complaint "almost barren of facts" may comprise claims of a specific category if read liberally. *Stewart,* 790 F.2d at 632.

■ Dismissal of a complaint is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). *See also, Dawson v. General Motors Corp.,* 977 F.2d 369, 372 (7th Cir.1992). This court must accept the well-pleaded factual allegations of the complaint as true and "construe such allegations in favor of the plaintiff." *Roots Partnership v. Lands' End, Inc.,* 965 F.2d 1411, 1416 (7th Cir.1992). As a point of clarification, the court notes that it is required to accept only factual allegations; "it is not required to accept legal conclusions that may be alleged or that may be drawn from the pleaded facts." *Milwaukee v. Saxbe,* 546 F.2d 693, 704 (7th Cir.1976); *see also, Reichenberger v. Pritchard,* 660 F.2d 280, 282 (7th Cir.1981).

To escape dismissal "[a] plaintiff need not set out in detail the facts upon which a claim is based, but must allege sufficient facts to outline the cause of action." *Marmon Group, Inc. v. Rexnord, Inc.,* 822 F.2d 31, 34 (7th Cir.1987) (citations omitted). "The complaint cannot be amended by the briefs filed by the plaintiff in opposition to a motion to dismiss." *Gomez,* 811 F.2d at 1039.

Likewise, the defendant may not "attempt to refute the complaint or to present a different set of allegations" in its 12(b)(6) challenge. *Id.* The defendant's attack must be against the sufficiency of the complaint; it "must demonstrate that the plaintiff's claim,

as set forth by the complaint, is without legal consequence." *Id.*

## III. Survivor Actions and Wrongful Death Actions under § 1983

■ Initially, this court must note that this is certainly a complex area of the law. A brief perusal of the cases in the Seventh Circuit certainly underscores this assertion. This court also feels compelled to point out that the litigants could have spent more time and effort on their respective briefs.

There are two state statutes at issue. The state statutes are I.C. 34–1–1–1 *Personal representative; continuing action* ("survival action statute"), and I.C. 34–1–1–2 *Death from wrongful act or omission* ("wrongful death statute"). The mention of the two statutes sends most lawyers running for assistance from the great Dean Prosser or reawakens memories of a period called law school, and a class called "Torts." At any rate, when the above-mentioned statutes are thrown into the crucible of § 1983, the picture is not always clear.

An important Seventh Circuit opinion in this area is the 48 page opinion in *Bell v. City of Milwaukee,* 746 F.2d 1205 (1984). In *Bell,* the court, speaking through Judge Cummings, tackled this issue in very detailed fashion and explained the complexities of why it is necessary to supplement the § 1983 statute with state law:

The statutory mechanism that authorizes resort to state law to provide enlightenment as to the parameters of actions under these statutes is 42 U.S.C. § 1988 which, where the civil rights laws are "deficient," invokes state law unless "inconsistent with" the Constitution and federal law. See *Robertson v. Wegmann,* 436 U.S. 584, 590, 98 S.Ct. 1991, 1995, 56 L.Ed.2d 554. Thus Section 1988 establishes a three-step process for the selection of the appropriate substantive law in civil rights cases. First, the court must decide whether the civil rights acts are "deficient" in furnishing a particular rule. If this inquiry is answered affirmatively, state law is examined to fill the interstices in the federal provisions. Often there is no state law

directly on point, so that only the provisions most closely analogous to federal civil rights law can be considered. Finally, the state law must be disregarded in favor of the federal law if the state law is inconsistent with the meaning and purpose of federal statutory and constitutional law. See *Robertson v. Wegmann,* 436 U.S. at 587–590, 98 S.Ct. at 1993–1995; *Heath v. City of Hialeah,* 560 F.Supp. 840, 841 (S.D.Fla. 1983).

\*    \*    \*    \*    \*    \*

Since the civil rights acts do not specify the survivability of Section 1983 actions, who the injured parties are when the victim is killed, or the measure of available damages, there must be a reference to state law unless inconsistent with federal law.

*Id.* at 1234. (footnote omitted)

Initially, this court must determine whether the Indiana wrongful death statute or the survival statute is applicable in this situation. The plaintiff's argument on this issue is entitled "Survivability of Unreasonable Seizure § 1983 Claims." The plaintiff outlines the important cases on this issue very cogently, but then states that the wrongful death statute, and *not* the survival action statute, is the proper state statute for purposes of this § 1983 action. Here, the plaintiff states that the wrongful death statute is operative "when a person's death is caused by the wrongful act of another, then his personal representative may bring a cause of action to recover damages; [and that t]his section is the exclusive remedy or provision which applies if damages are claimed for conduct causing a person's death." *See Plaintiffs' Memorandum Brief* at 7–8.

Insofar as the plaintiff was so adamant that the wrongful death statute was the proper statute for purposes of this § 1983 action, and not the survival action statute, the defendants altered their position to a certain extent. Initially, the defendants argued that the plaintiff could not pursue a § 1983 action under either the survival statute or the wrongful death statute. After, the plaintiff declared that the complaint was based solely on the wrongful death statute, the defendants conceded that under certain circumstances a § 1983 action could be viable based on survival action statutes. The defendants indicated that "[s]ince plaintiff is not proceeding under the survival statute, ..., it is difficult to understand why plaintiff even bothers arguing further about survivability statutes and the case of *Robertson v. Wegmann,* 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978)."[1] *See Defendant's Memorandum, Brief.*

The issue is whether to proceed according to the parameters of the survival statute or the wrongful death statute. To resolve this issue, this court consulted a cogent and very well written opinion from the Sixth Circuit. In *Jaco v. Bloechle,* 739 F.2d 239 (6th Cir. 1984), the court explained the theory of § 1983 actions and in so doing, clarified this complex issue:

It is conceded by most courts that [wrongful death actions and survival actions] are distinct causes of action. E.g., *Rosa v. Cantrell,* 705 F.2d 1208, 1222 (10th Cir. 1982). A survival claim is predicated upon the decedent's claim for damages sustained during his lifetime. On the other hand, a wrongful death action creates a new and separate claim or cause of action for the damages sustained by decedent's estate as a result of his death. The distinction as it arises in conjunction with alleged § 1983 violations is apparent. The § 1983 cause of action, by virtue of the explicit language of the section itself, is a personal action cognizable only by the party whose civil rights had been violated; while, on the other hand, the wrongful death action is a cause of action that inures to the benefit of decedent's estate, as a result of, not the

---

1. The *Robertson* decision is perhaps the key to the entire enigma surrounding this issue. Here, the plaintiff argued that pursuant to the Supreme Court opinion in *Robertson v. Wegmann,* 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978), and under the Seventh Circuit's opinion in *Green v. Carlson,* 581 F.2d 669 (7th Cir.1978), its § 1983 action is viable. The plaintiff points out that the *Robertson* Court recognized two policies important to the issue of survivability in § 1983 actions. The two policies are "compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those action under color of law." *Robertson,* 436 U.S. at 591, 98 S.Ct. at 1995.

personal injury suffered by the decedent, but rather, injuries to his estate caused by his wrongful death.

\* \* \* \* \* \*

Certainly, in a sense, the heirs are injured parties as a result of decedent's premature demise however, to arbitrarily conclude that their injuries resulted from an infringement of their civil rights would be sheer obfuscation of the issue. Simply stated, the wrongful death of the decedent resulting from a tort, which gives rise to the cause of action for the benefit of his heirs, is not equivalent to decedent's personal § 1983 claim, and decedent's administratrix is therefore without standing in the federal forum to commence an action, pursuant to §§ 1983 and 1988, under either the Ohio survivor or wrongful death statute.

*Id.* at 242–43.

In 1985, after many courts had carefully considered the above-mentioned issues, the Supreme Court in *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), ruled on an important issue, which altered the polemics of this issue to a degree. The *Wilson* Court indicated that § 1983 actions were most analogous to state claims for personal injuries for purposes of statutes of limitations. *Id.* Many courts have invoked the *Wilson* decision in order to ascertain whether § 1983 litigants should look to wrongful death statutes or survival action statutes.

The Seventh Circuit, in *Bennett v. Tucker*, 827 F.2d 63 (7th Cir.1987), addressed the above-mentioned issue in light of *Wilson.* In *Bennett,* the court, speaking through Judge Flaum, explained:

Federal law governs whether a federal claim survives. However, § 1983 is silent on the question of survivability. Therefore, we must look to 42 U.S.C. § 1988, which provides a rule of decision in a civil rights case, federal law will incorporate the appropriate state law, unless that law is "inconsistent with the Constitution and laws of the United States," 42 U.S.C. § 1988 (1982); see *Robertson v. Wegmann*,

436 U.S. 584, 590–94, 98 S.Ct. 1991, 1995–97, 56 L.Ed.2d 554 (1978).

In *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Supreme Court held that, under § 1988, the appropriate state law to look to in determining whether a § 1983 claim is time-barred is the state law governing whether a personal injury claim is time-barred. *Id.* at [277, 105 S.Ct. at] 1948. The Court stressed the importance of adopting uniform rules governing the timeliness of all § 1983 claims, see *Id.* at [270–77, 105 S.Ct. at] 1944–47, and the appropriateness of analogizing a § 1983 claim to a personal injury claim, *Id.* at [277–281, 105 S.Ct. at] 1948–49. We believe that it is equally important to have a uniform rule of survivorship for § 1983 claims, and that it would be anomalous to use a different analogy in this context. Accordingly, we conclude that, in order to determine whether a § 1983 claim survives, we must look to the state law governing whether a personal injury claim survives.

*Id.* at 67–68.

Additionally, this court consulted the state law of Indiana on this issue as well. In *Culver–Union Township Ambulance Service v. Steindler,* 611 N.E.2d 698 (1993), the Fourth District of the Court of Appeals of Indiana, speaking through Judge Sullivan, evaluated the above-mentioned issues. In *Steindler,* the complaint stemmed from an incident wherein "ambulance personnel 'negligently failed to take adequate steps to respond' to decedent's emergency situation." *Id.* In pursuing this action, the executrix of the decedent filed a § 1983 action with attendant state tort claims in state court. The *Steindler* court evaluated the aforementioned issues:

Actions brought under § 1983 are considered most analogous to state claims for personal injury, and are treated accordingly for purposes of limitations upon the time for filing of the complaint. *Wilson v. Garcia,* (1985) 471 U.S. 261, 105 S.Ct. 1938 [85 L.Ed.2d 254]. Upon first appearance, such classification, in the case before us, defeats the § 1983 claim because personal injury claims do not survive death unless

the death is occasioned by causes other than those alleged as the basis for the personal injury claim. I.C. 34-1-1-1 (Burns Code Ed.Sup.1991). In this light, Executrix understandably urges that we consider the claim to be in the nature of a wrongful death claim. Admittedly, a pleader has the dilemma of asserting a "personal injury" claim which would arguably survive, in which case he would be hard pressed to allege the egregious constitutional deprivation which led to death while at the same time claiming that the death was from causes other than the "personal injury" giving rise to the claim.

\* \* \* \* \* \*

The § 1983 claim does not make claim for any expenses such as set forth in the statute, nor for the benefit of any dependent. To the contrary, the claim is clearly and unmistakably directed solely to [the decedent's] own "right to live", a right wholly personal to the decedent, a violation of which would necessarily constitute a personal injury. By reason of Executrix's own characterization of the claim, it must be categorized as are other § 1983 actions—a personal injury claim. The *Wilson v. Garcia, supra*, and its various permutations must be held applicable.

We acknowledge the application of a survival statute, as here, does not precisely equate with application of statute of limitations, as in *Wilson v. Garcia, supra*. Nevertheless, the concept of analyzing a § 1983 claim in terms of the most closely analogous state claim, i.e., a claim for personal injury, cannot reasonably be faulted in this situation. *Bennett v. Tucker* (1987) 7th Cir., 827 F.2d 63.

*Id.*

Here, originally, the defendants argued that neither the wrongful death statute nor the survival action statute were viable for the plaintiff's § 1983 action. Then, as the court indicated previously, the plaintiff contended that this § 1983 action is based on the wrongful death statute and argued for its viability. In the defendants' reply brief, the defendants adopted the plaintiff's choice of the wrongful death statute and argued against its viability in the action, while tacitly indicating that some § 1983 actions are viable with state survival statutes. Both the plaintiff and the defendants have to some extent overcomplicated and to some extend oversimplified the issues, thereby misconstruing some fundamental issues.

■ In light of *Jaco*, and *Steindler*, this court finds that this § 1983 action *cannot* rely on Indiana's wrongful death statute.[2] Based on the underlying framework of § 1983 actions as explained in *Jaco*, it is

2. The Seventh Circuit in *Bass by Lewis v. Wallenstein*, 769 F.2d 1173 (7th Cir.1985), speaking through Judge Wood, explained that:

> The proper approach at this point is not to transform the § 1983 action on behalf of [the decedent] into a wrongful death action on behalf of those who survived him, but to determine whether state law is inconsistent with the compensatory and deterrent policies underlying § 1983. This court recently performed this analysis in *Bell* with results that pertain here. We held that where the constitutional deprivation sought to be remedied has caused death, state law that precludes recovery on behalf of the victim's estate for the loss of life is inconsistent with the deterrent policy of § 1983. *Bell*, 746 F.2d at 1240; see also *Guyton v. Phillips*, 532 F.Supp. 1154, 1167-68 (N.D.Cal. 1981).

*Id.* at 1189-90.

In *Culver-Union Township Ambulance Service v. Steindler*, 611 N.E.2d 698 (1993), the Fourth District of the Court of Appeals of Indiana explained further the Indiana wrongful death statute:

> Except as to medical, hospital, funeral and burial expenses, recovery for wrongful death inures solely to the benefit of a widow, dependent children or dependent next of kin. I.C. 34-1-1-2.
>
> \* \* \*
>
> Lord Campbell's Act in 1846 rejected the English common law proscription against wrongful death actions. It created a new and independent cause of action for a statutorily designated beneficiary of the decedent. Because such wrongful death actions, and such as presently exists in Indiana, were focused upon the harm to the beneficiary's interests and vested the action in the survivor, the cause of action is not, as has been claimed by some commentators, "still the one the decedent would have had at the time of his death had the wrongful act not resulted in death." Steinglass, Wrongful Death Actions and § 1983, 60 Ind.L.J. 559, 572-573. The one may perhaps be deemed a substitute for the cause of action lost by the decedent but it is not the same claim.

*Id.*

apparent that the wrongful death statute does not effectuate the mechanism requisite to actions of this ilk. More importantly, the opinion of the Seventh Circuit in *Bennett* is precedent, and the Court of Appeals of Indiana in *Steindler* is very persuasive, especially in ascertaining how the state courts view their own statutes in this area.

This court also finds that this § 1983 action *cannot* rely on Indiana's survival action statute. Much of the above-mentioned case law indicates that § 1983 actions *are* to utilize state survival action statutes. However, it becomes difficult to do so under certain circumstances. Those circumstances are at issue here. As explained in *Jaco,* a state survival statute that requires the abatement of personal injury actions that result in death could bar a § 1983 action invoking that particular state's survival law. Both the plaintiff and defendants concede that the Indiana survival statute is of this ilk and only allows for a survival action if an individual has a personal injury existing prior to the date of death, which did not cause death. Here, as in *Jaco,* under the state law of Ohio and of Indiana, the survival action is barred because "death was instantaneous." *Jaco,* 739 F.2d at 242. There is, however, an exception to this problem.

On this issue, the plaintiff correctly argues that the entire issue is resolved by the Supreme Court opinion in *Robertson.* The plaintiff's logic is supported by the Sixth Circuit in *Jaco,* and by the Seventh Circuit in *Bell. See also Green v. Carlson,* 581 F.2d 669 (7th Cir.1978).

In *Bell,* the Seventh Circuit explained the Supreme Court decision in *Robertson:*

[In *Robertson,* the] plaintiff died but not as a result of the putatively unconstitutional act, the Supreme Court has confirmed that restrictive state statutes apply to Section 1983 actions. In *Robertson v. Wegmann,* 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554, the plaintiff who brought a Section 1983 action for malicious prosecution died while his suit was pending. The Court held that pursuant to Section 1988 the applicable Louisiana law governed the survivability issue. Under the state law, the decedent's action abated because no

person with the requisite relationship to him was alive at the time of his death. Concluding that this outcome was not inconsistent with the policies of Section 1983, the Court ruled that the action did not survive but explicitly declined to express any view on the particular issue before us, i.e., whether a cause of action exists in favor of the estate despite state law which precludes such, where the alleged deprivation of constitutional rights caused death. *Robertson v. Wegmann,* 436 U.S. at 594, 98 S.Ct. at 1997. However, the Court specifically admonished that:

A state statute cannot be considered "inconsistent" with federal law merely because the statute causes the plaintiff to lose the litigation. If success of the § 1983 action were the only benchmark, there would be no reason at all to look to state law, for the appropriate rule would then always be the one favoring the plaintiff, and its source would be essentially irrelevant. But § 1983 quite clearly instructs us to refer to state statutes; it does not say that state law is to be accepted or rejected based solely on which side is advantaged thereby.

*Bell,* 746 F.2d at 1237.

Next, the *Bell* court explained the policies enunciated in *Robertson* and how these policies impacted on a Section 1983 action predicated upon an excessive use of force under the Fourth Amendment and the particular state survival statute at issue:

Further, the fundamental policies behind § 1983 are twofold: compensation for and deterrence of unconstitutional acts committed under state law. *Robertson v. Wegmann,* 436 U.S. at 590–591, 98 S.Ct. at 1995–1996. One of the primary reasons Section 1983 was enacted was to remedy and deter racial killing and other acts violative of the Fourteenth Amendment. See *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492, *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 1116–1117, 75 L.Ed.2d 96. The legislative history behind Section 1983 expresses and unequivocal concern for protecting *life.* President Grant's message to Congress which inspired the Ku Klux Klan Act's passage specifically re-

ferred to "[a] condition of affairs in some States of the Union rendering life and property insecure * * *." Cong. Globe, 42d Cong., 1st Sess. 244 (1871) (emphasis added). Floor debates on the bill frequently reflected this theme. See, e.g., Statements of Rep. Stoughton, *id.* at 321–322 (the purpose of the Ku Klux Klan Act is to provide federal protection for "life, person and property."); Statements of Rep. Lowe, *id.* at 447 ("[W]hile murder is stalking abroad in disguise, while whippings and lynchings and banishments have been visited on unoffending American citizens, the local administrations have been found inadequate or unwilling to apply the proper corrective.").

The deterrence object of Section 1983 was not paramount in *Robertson v. Wegmann* as it is here. In *Robertson* death was an intervening circumstance, and thus the Court did not perceive any significant loss of deterrence if the restrictive Louisiana statute were applied, commenting that:

> In order to find even a marginal influence on behavior as a result of Louisiana's survivorship provisions, one would have to make the rather farfetched assumptions that a state official had both the desire and the ability deliberately to select as victims only those persons who would die before conclusion of the Section 1983 suit for reasons entirely unconnected with the official illegality and who would not be survived by any close relatives.

*Robertson,* 436 U.S. at 592 n. 10, 98 S.Ct. at 1996 n. 10. But since the instant case the killing is the unconstitutional act, there would result more than a marginal loss of influence on potentially unconstitutional actors and therefore on the ability of Section 1983 to deter official lawlessness if the victim's estate could not bring suit to recover for loss of life. Moreover, if Section 1983 did not allow recovery for loss of life notwithstanding inhospitable state law, deterrence would be further subverted since it would be more advantageous to the unlawful actor to kill rather than injure. As the Supreme Court observed in *Carey v. Piphus,* 435 U.S. 247, 258 98 S.Ct. 1042, 1049, 55 L.Ed.2d 252, "[i]t is not clear

* * * that common-law tort rules of damages will provide a complete solution to the damages issue in every Section 1983 case." Therefore it is appropriate, as the Supreme Court has noted in regard to Section 1983 damage issues, to fashion "a federal rule responsive to the need whenever a federal right is impaired." *Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 240, 90 S.Ct. 400, 406, 24 L.Ed.2d 386. *Id.* at 1239 (footnote omitted).

Additionally, in *Jaco,* the issue was again a § 1983 action predicated on the excessive use of force and the viability of the state survival statute. Here, "[p]laintiff's son (the decedent) was shot and instantly killed by police officers following an incident in which he had reportedly been discharging firearms outside of his home." *Jaco,* 739 F.2d at 240. In *Jaco,* as indicated in the foregoing discussion, the Ohio survival statute barred an action of this ilk, however as the court explained:

> In *Robertson,* the state law had afforded the decedent an opportunity to pursue his constitutional claim and, upon his death from causes unrelated to the alleged illegal act, a reasonable state vehicle for the survival of that claim had been provided. In contrast, in the case at bar strict adherence to the relevant state law eviscerates the civil rights claim. Under Ohio's survival statute, this decedent's civil rights cause of action would have survived if his death had not been instantaneous; in light of the sweeping language of the enactment, to suggest that the Congress had intended that a civil rights infringement be cognizable only when the victim encounters pain and suffering before his demise, is absurd. The § 1983 objective of protecting individual civil liberties by providing compensation to the victim for an illegal deprivation of constitutional entitlement by state officers cannot be advanced, and is only undermined, by deferring to a state law which decrees abatement under circumstances where, as here, asserted constitutional infringements resulting from action taken under color of law caused instant death. Surely, § 1983's further purpose to discourage official constitutional infringement would be threatened if *Jaco* were not

permitted to champion her dead son's civil rights. Ohio's survivorship law is then hostile to "the Constitution and laws of the United States." To afford effect to the expressions and directions of the Supreme Court in *Robertson v. Wegmann*, where, as here, the survival statutes of the forum state are hostile to promoting deterrence, protection and vindication against § 1983 civil rights infringements perpetrated under color of law, the federal court must implement the congressional intent by allowing survival.

*Id.* at 244–45.

Here, this court holds for the reasons succinctly explained in *Bell* and *Jaco* that the decedent's civil rights claim, a personal cause of action, may be pursued in the name of the decedent's personal representative. This ruling effectuates the recognized policies important to the issue of survivability in § 1983 actions. The two policies are "compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law." *Robertson*, 436 U.S. at 591, 98 S.Ct. at 1995.

## IV. Qualified Immunity

■ In the recent decision of *Plakas v. Drinski*, 811 F.Supp. 1356 (N.D.Ind.1993), Judge Lozano evaluated a § 1983 action based on the Fourth Amendment and the excessive use of force. In *Plakas*, Judge Lozano explained the important Supreme Court cases in this area:

> The United States Supreme Court in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), held that claims of excessive force in the course of arrest or other seizure must be analyzed under the Fourth Amendment's "objective reasonableness" standard. The Court looks to "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397, 109 S.Ct. at 1872; *McDonald v. Haskins*, 966 F.2d 292, 293 (7th Cir.1992).
>
> The use of deadly force will be deemed objectively reasonable "where the officer has probable cause to believe the suspect poses a threat of serious physical harm, either to the officer or to others." *Tennes-*

*see v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 1701, 85 L.Ed.2d 1 (1985). "Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." *Id.* at 11–12, 105 S.Ct. at 1701. The existence of probable cause is a question for the jury only "if there is room for a difference of opinion." *Ford v. Childers*, 855 F.2d 1271, 1275 (7th Cir.1988). Additionally, it is imperative that in determining the reasonableness of the officer's conduct, the focus is on the very moment when the officer makes the "split second judgments", *Graham v. Connor*, 490 U.S. at 397, 109 S.Ct. at 1872, which led to the use of deadly force:

> The "reasonableness" of a particular use of force must be judged from the prospective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.... The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Id.* (citations omitted).

*Id.* at 1361.

The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), explained the objective test for determining when a government official is entitled to qualified immunity:

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Id.* at 818, 102 S.Ct. at 2738. *See also Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984), *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). In *Auriemma v. Rice*, 910 F.2d 1449 (7th Cir.1990) (en banc), *cert. denied*, — U.S. ——, 111 S.Ct. 2796, 115 L.Ed.2d 970

(1991), the Seventh Circuit indicated that the evaluation for qualified immunity hinges on "whether the law is clear in relation to the specific facts confronting the public official when he acted." *Id.* at 1455. "The plaintiff therefore bears the burden of establishing the existence of a constitutional right by citing '[c]losely analogous cases, those decided before the defendants acted or failed to act.' " *Sturdevant v. Haferman,* 798 F.Supp. 536 (E.D.Wis.1992) (quoting *Rakovich v. Wade,* 850 F.2d 1180, 1209 (7th Cir.) (en banc) (quoting *Powers v. Lightner,* 820 F.2d 818, 821 (7th Cir.1987)), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988)).

This court will not make a decision in this area based on the foregoing in light of the dearth of facts currently before this court. The court will decide this issue as it is apprised further of the various details surrounding the incident at issue here.

## V. Conclusion

In light of the foregoing, the defendants' motion for judgment on the pleadings is **DENIED.** The plaintiff is entitled to pursue this action under the law of 42 U.S.C. § 1983.

**IT IS SO ORDERED.**