SIMPSON'S FOOD FAIR, INC., *v*. CITY OF EVANSVILLE.

[No. 770 A 106. Filed September 15, 1971. Rehearing denied October 12, 1971. Transfer denied January 4, 1972.]

*Ralph M. Koehne, John D. Clouse,* of Evansville, for appellant.

*Robert S. Matthews, Ronald Warrum, Jerry P. Baugh, Philip H. Seigel,* of Evansville, for appellee.

SULLIVAN, P.J.—Plaintiff-appellant, a retail grocery corporation in Evansville, alleged in its two-paragraph complaint that the failure of the city police to halt a wave of criminal activities had forced it to go out of business and to suffer damages in the amount of $1,000,000.00 Theories of negligence and strict liability were unsuccessfully advanced by plaintiff relying upon I. C. 1971, 18-1-11-7, being Ind. Ann. Stat., § 48-6110 (Burns 1963), in that defendant's Motion to Dismiss the complaint was sustained. Plaintiff, failing to plead over, suffered judgment to be entered against it, from which judgment this appeal is taken. The statute relied upon by plaintiff reads as follows:

"Duties of police force.—It is hereby made the duty of such police force, and the members thereof are specially empowered, at all times, within such city, to *preserve peace; prevent crime; detect and arrest offenders;* suppress riots, mobs and insurrections; disperse unlawful and dangerous assemblages, and assemblages which obstruct the free passage of public streets, sidewalks, parks, and places; protect the rights of persons and property; guard the public health; preserve order at elections and public meetings; direct the movement of teams and vehicles in streets, alleys or public places; remove all nuisances in public streets, parks or highways; arrest all street beggars and vagrants; provide proper police assistance at fires; assist, advise and protect strangers and travelers in public streets or at railroad stations; carefully observe and inspect all places of business under license, or required to have the same, all houses of

ill fame or prostitution, and houses where common prostitutes resort or reside, all lottery or policy-shops, all gambling-houses, cockpits, dance houses and resorts; and to suppress and restrain all unlawful or disorderly conduct or practices, and enforce and prevent the violation of all ordinances and laws in force in such city." (Emphasis supplied).

The plaintiff-appellant contends that the City of Evansville knew or should have known of the high incidence of criminal activity in the plaintiff's neighborhood; that it refused to assign extra police to patrol the area or to request outside police assistance from the State; that a duty to protect the plaintiff and to prevent crime was breached; and that such breach proximately caused the plaintiff to lose customers and merchandise and ultimately to cease business operation.

The question for review is whether the City of Evansville under the circumstances is cloaked with immunity, thereby requiring dismissal of plaintiff's complaint.

The general rule regarding the immunity of municipal corporations for the acts of police officers has been stated by leading authorities. It was recently noted:

"The rule, that a municipality is not liable for mere nonfeasance of police officers in the performance of governmental duties, obtains generally even in those states in which the municipality is not immune from liability for the torts of such officers." 18 McQuillin *Municipal Corporations* (3rd Ed. 1963), § 53.80.

An earlier authority recognized that immunity of the municipality derived from the difference between public and private duties owed citizens by police officers:

"*When officers liable to private suits.* The rule of official responsibility then, appears to be this: That if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecution. (Citations omitted). On the other hand, if the duty is a duty to the individual, then a neglect to

perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages. (Citations omitted). 'The failure of a public officer to perform a public duty can constitute an individual wrong only when some person can show that in the public duty was involved also a duty to himself as an individual, and that he has suffered a special and peculiar injury by reason of its non-performance.' (Citations omitted.)" (Cooley on *Torts,* pp. 756 ff).

Though we have no controlling Indiana precedent, some recent representative cases serve to mark the distinction between public and private duty. In *Wong* v. *City of Miami* (1970), — Fla. —, 237 So. 2d 132, the withdrawal of extra police from the area of a civil rally prior to a riot was alleged by damaged store owners to be negligence on the part of the city. The Supreme Court of Florida held, however, that the city was not negligent in its removal of police officers since it had an inherent right in the carrying out of its police powers to determine strategy and tactics.

In *Massengill* v. *Yuma County* (1969), 104 Ariz. 518, 456 P. 2d 376, a county sheriff followed two cars engaged in a drag race but did not apprehend them before one crashed head-on into another motorist. The Supreme Court of Arizona upheld the doctrine of immunity stating that the duty of the officer to immediately arrest the dragsters was one owed to the public and not to the individual motorist.

In *Huey* v. *Town of Cicero* (1968) 41 Ill. 2d 361, 243 N. E. 2d 214, the Supreme Court of Illinois held that a municipality and its employees are not liable for failure to supply general police protection and that the municipality could only be liable where it is under a special duty to a particular individual. Under the facts of that case a young Negro was beaten to death in a white sector of the town when local police knew of the possibility of racial disorder. The court found no private duty arising on the basis of the complaint since it did not allege that the town or its agents knew of the presence of the

decedent in town; that the decedent had requested police protection; or that he was in particular danger.

## EXCEPTIONS TO IMMUNITY DOCTRINE WHERE PRIVATE DUTY EXISTS

In recent years the doctrine of immunity from civil liability has suffered continuing erosion. The presence of the amorphous and ill-defined duty owed by government to the public as a predominating factor which insulates government from tort responsibility is giving way to consideration of a more fundamental duty owed to private individuals. The shift in emphasis has been prominent in Indiana as well as in the rest of the nation. See *Perkins* v. *State* (1969), 252 Ind. 549, 251 N. E. 2d 30; *Brinkman* v. *City of Indianapolis* (1967), 141 Ind. App. 662, 231 N. E. 2d 169; *Campbell* v. *State* (1971), 269 N. E. 2d 765. In *Brinkman* v. *City of Indianapolis, supra,* the city was held liable for the wrongful death of a resident, seriously ill, who called the police for emergency transportation to the hospital but who was instead negligently arrested and jailed by the police officer who assumed that the man was merely drunk. Although this court was, in that decision, intent upon the issue concerning establishment of liability of the municipality for the torts of its agents, rather than upon a description of the nature of the duty owed the individual, we note that the duty in *Brinkman* was patently a private duty owed to the particular individual. That duty arose when the individual was taken into custody .

Generally, to be private, a duty must be particularized as to an individual. As stated in *Huey, supra:*

> "Exceptions to the [immunity] rule have been found only in instances where the municipality was under a special duty to a particular individual, such as protecting a material witness from threatened injury by third parties." 243 N. E. 2d 214, 216.

Such exception is demonstrated by the factual circumstance in *Schuster* v. *City of New York* (1958), 5 N. Y. 2d 75, 154 N. E. 2d 534, wherein an informer was murdered after requesting police protection. The Court of Appeals of New York held that the public, acting through a municipality, owes a special duty to use reasonable care for protection of persons who have collaborated with it in the arrest or prosecution of criminals, once it reasonably appears that the informant is in danger due to his collaboration. A special duty, however, does not arise merely because an individual requests police assistance. In *Riss* v. *City of New York* (1968), 22 N. Y. 2d 579, 240 N. E. 2d 860, the city was held not liable to an assault victim for failure to supply police protection upon request. Yet as the Court of Appeals of New York noted:

> "Quite distinguishable, of course, is the situation where the police authorities *undertake* responsibilities to particlar members of the public and expose them, without adequate protection, to the risk which then materialize into actual losses." (Emphasis supplied). 240 N. E. 2d 860, 861. See also *Brinkman* v. *City of Indianapolis, supra.*

## BASS CASE DISTINGUISHED

Plaintiff-appellant admits the paucity of precedent in favor of his position and relies almost entirely upon *Bass* v. *City of New York* (1969), 61 Misc. 2d 465, 305 N. Y. S. 2d 801. In that case a nine-year-old girl living in a housing project owned and operated by the New York City Housing Authority was carried to the roof of one of the buildings, stripped, raped, suspended over the edge of the building and dropped to her death fourteen stories below by another resident of the project. Statutes nearly identical to that in Indiana were in effect which specified that duties of the police force of New York City and of a special force which *could* be maintained by the New York City Housing Authority if it *chose* to do so. The duties of the city police force extended to the housing project except where the housing authority maintained its own force. In a suit by the parents of the girl against the housing author-

ity, the court found that the housing complex was crime ridden, that the evidence clearly indicated the housing authority was, in fact, a private landlord which elected to assume police power over the complex, organizing and maintaining its own police force, and that it negligently failed to provide adequate personnel, equipment, and procedures needed to protect the tenants.

The court's decision in favor of plaintiffs was based not upon a duty owed by a municipality to an individual but upon a private duty owed by a private landlord to a tenant. The *Bass* case is not analogous to the instant case. In *Bass*, a special duty[1] was undertaken by a private landlord; in the case before us, a general public duty is involved, no special duty having been undertaken. Further, in *Bass*, liability of the municipality was not at issue.[2]

Although plaintiff-appellant urges that we should, despite a lack of precedent, adopt a new theory of tort liability—one guaranteeing losses resulting from criminal acts—we are wont to adopt such theory for numerous reasons. Not only would such adoption usurp legislative prerogative and thereby interfere with the separation of powers concept, it would also lead to arbitrary application of the theory itself. Our hesitancy is not without practical foundation. As was stated in *Schuster, supra:*

"To uphold such a liability does not mean that municipalities are called upon to answer in damages for every loss caused by outlaws or fire. Such a duty to Schuster bespeaks no obligation enforcible (sic) in the courts to exercise the police powers of government for the protection of every member of the general public." 154 N. E. 2d 534, 537.

---

1. As the court in *Bass* pointed out:
"The residents in defendant's project are not members of the public who are casually present in an area for which the defendant bears no special responsibility This is beyond question a 'private enterprise' with an indicated special responsibility." 305 N. Y. S. 2d 801, 806.

2 The action originally brought against both the city and the housing authority was discontinued as against the city.

The cogent observations of *Riss, supra,* are also to be noted:

> "When one considers the greatly increased amount of crime committed throughout the cities, but especially in certain portions of them, with a repetitive and predictable pattern, it is easy to see the consequences of fixing municipal liability upon a showing of probable need for and request for protection. To be sure these are grave problems at the present time, exciting high priority activity on the part of the national, State and local governments, to which the answers are neither simple, known, or presently within reasonable controls. To foist a presumed cure for these problems by judicial innovation of a new kind of liability in tort would be foolhardy indeed and an assumption of judicial wisdom and power not possessed by the courts." 240 N. E. 2d 860, 861.

Appellant relies upon a "risk-spreading" concept to support its contention, quoting from *Bierman* v. *City of New York* (1969), 60 Misc. 2d 497, 302 N. Y. S. 2d 696, 697:

> "* * * But when the task is the allocation of burdens between a plaintiff who is little more than a bystander in his own society and government itself, talk of negligence leaves the highroad to justice in darkness. Accidents happen. Injuries occur. People suffer. Frequently nobody is at fault. The problem is one of mechanics, not morals. *The law should therefore turn from fault as a rule of decision.* Rather, judges must find a rule to decide whose the cost and whose the compensation so as to satisfy the legislature's command in a case like this 'to do substantial justice.' " (Emphasis suplied).

We reject the rationale as set forth.

Governmental units cannot be held "absolutely liable" for any and all acts or omissions which might cause damage or injury to private citizens. See *Massengill* v. *Yuma County, supra.* Compare *Galbreath* v. *Engineering Construction Corp.* (Decided September 9, 1971), 149 Ind. App. 347, 273 N. E. 2d 121. We will not impose upon government the obligation to *guarantee* and *assure* the health, wealth and happiness of every living person. The law must encourage and protect those subjective values, goals and ideals where

possible but it cannot guarantee them. Only human ingenuity, initiative, dignity, love, understanding and compassion can approach such absolute achievement.

*Affirmed* by the First Division.

Buchanan, Lowdermilk and Robertson, JJ., concur.

NOTE.—Reported in 272 N. E. 2d 871.