**Mary Ann LEWIS for herself and as Personal Representative of the Estate of David Lewis, Plaintiff–Appellant,**

v.

**The CITY OF INDIANAPOLIS and The Indianapolis Police Department, Defendants–Appellees.**

**No. 73A01–8912–CV–514.**

Court of Appeals of Indiana, First District.

May 22, 1990.

John J. Sullivan, Indianapolis, for plaintiff-appellant.

Thomas M. Carusillo, City–County Legal Div., Indianapolis, for defendants-appellees.

BAKER, Judge.

This appeal from summary judgment in favor of the City of Indianapolis and its police department raises the issue of whether a municipality and its police department may be held liable for an individual's injuries suffered as a result of the municipality's police department's failure to timely answer its emergency telephone "911" system.

The facts most favorable to plaintiff-appellant, Mary Ann Lewis (Mrs. Lewis), reveal that her husband, David Lewis, age 52, suffered a heart attack in his home at approximately 5:30 p.m. on October 26, 1987. Mr. Lewis's 28 year old stepdaughter, Venessa Riggs, telephoned 911 on three separate occasions. She allowed the phone to ring at least 10 times, but no one answered the calls.

Thereafter, Vanessa called her grandmother, who then successfully reached 911. Mrs. Lewis contends that the delay in medical assistance was approximately 10 minutes. In that period of time, Mr. Lewis stopped breathing, thus shutting off oxygen to his brain. Although the emergency assistants were able to restart Mr. Lewis's heart, the lapse of oxygen to his brain left him with permanent damage to his brain and his heart.

According to the evidence most favorable to Mrs. Lewis, all 911 calls under the system adopted by the defendants were channeled through a common switchboard, whether they were emergency, administrative, or personal calls. If a citizen called with an emergency, his or her call had to wait until the operators freed themselves of non-emergency calls. In a medical emergency situation, the operator would simply "patch" the call through to Wishard Hospital in Indianapolis. The operator would then continue to monitor the call, but once Wishard received the call, it was Wishard's responsibility to send aid.

Mr. Lewis remained hospitalized for four months, but died on February 4, 1988, with a significant contributing cause of death

being anoxic encephalopathy. Mrs. Lewis, as the estate representative, brought suit against the city and the Department to recover medical expenses, lost earnings, and loss of love and affection.

The City and Department moved for summary judgment, arguing that the facts most favorable to Mrs. Lewis did not give rise to a special duty flowing from the City to the plaintiff. The trial court granted the motion. We affirm.

Mrs. Lewis first contends the City and Department are not immune from suit because the operation of the 911 system was not a discretionary governmental function immune from suit under IND.CODE 34-4-16.5-3(6). Rather, she argues that while the decision to establish a 911 system was a discretionary act immune from tort liability, the operation of the system was solely ministerial and subject to liability. In their statement of contentions, issues of fact and issues of law, the City and Department asserted that whether they were immune from suit under the Indiana Tort Claims Act, (ITCA), IND.CODE 34-4-16.5-1 et seq., was a contended issue of law. *Record* at 132-33. They abandoned this defense in their motion for summary judgment, their memorandum in support of the summary judgment motion, and on appeal. *Record* at 127-30, 152. Thus, it would be improper for us to find the City and the Department immune.[1] We therefore address the question of discretionary and ministerial acts because Mrs. Lewis argues a determination that operation of the 911 system was a ministerial act is dispositive of the case.

▮ Mrs. Lewis's argument is essentially that while a finding of immunity would bar her action, a finding of no immunity would *ipso facto* lead to a judgment for her. She is mistaken. The determination that a governmental entity's act is ministe-

rial does not automatically mean the entity will be liable for that act. A plaintiff must still pass the muster of a standard tort analysis. In an instructive remark, our supreme court recently stated, "A county's considered decision to entrust placement of traffic control devices to a traffic engineer is not reviewable under tort standards, while the engineer's subsequent decisions as to warning signs are *reviewable under tort standards of* professional *negligence.*" *Peavler v. Monroe City Bd. of Commissioners* (1988), Ind., 528 N.E.2d 40, 47 (emphasis added). Thus, a finding of immunity bars a plaintiff's suit. A finding of non-immunity requires a plaintiff to show the three elements of actionable negligence: (1) a duty owed by the defendant to conform its conduct to a standard of care necessitated by its relationship with the plaintiff; (2) a breach of that duty; and (3) an injury to the plaintiff stemming from that breach. *Hatton v. Fraternal Order of Eagles* (1990), Ind.App., 551 N.E.2d 479, 480; *see also Miller, supra,* 261 Ind. at 610-11, 308 N.E.2d at 706.[2] Assuming, but not deciding, that operation of the 911 system was ministerial, we note our standard of review and turn to the question of whether the City and the Department owed a duty to Mr. Lewis.

▮ Disposition of a case by summary judgment is appropriate only when no genuine issues of material fact exist and the proponent is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). The proponent bears the burden of proving the propriety of the motion, and both the trial court and this court examine the pleadings, depositions, answers to interrogatories, admissions, and affidavits filed with the court in the light most favorable to the opponent of the motion. *Webb v. Jarvis* (1990), Ind.

---

1. Discussing common law governmental immunity before the enactment of ITCA, our supreme court required a governmental entity claiming immunity to plead and maintain that claim throughout trial and upon appeal. *Miller v. Griesel* (1974), 261 Ind. 604, 607-609, 308 N.E.2d 701, 704-705.

2. The distinction between immunity analysis and duty analysis has often been unclear. As Judge Robertson aptly stated, "This is strictly a matter of tort law, although it has been intermixed with the discretionary/ministerial dichotomy in Indiana." *Crouch v. Hall* (1980), Ind.App., 406 N.E.2d 303, 304.

App., 553 N.E.2d 151. *Hatton, supra*, at 480.

Mrs. Lewis argues this court's holding in *Mills v. American Playground Co.* (1980), Ind.App., 405 N.E.2d 621 imposes a duty on the City and Department towards individual members of the public who utilize the 911 system.[3] We disagree. *Mills* involved a child's injury at a municipal park. The court defined a municipality's duty as one "to exercise ordinary care to make public parks reasonably safe for persons rightfully frequenting and using the parks and equipment." *Id.* at 627. *Mills* is limited to actions involving injuries in public parks and is not controlling here.

We recognize that the issue raised in this appeal presents a novel question not previously addressed. Nonetheless, a number of cases enunciate the proposition that liability to an individual for damages will not lie when the public body owed a duty to the general public as a whole, unless the plaintiff can show a special duty or special relationship entitling him to recover for a breach of that duty or relationship. *Crouch v. Hall* (1980), Ind.App., 406 N.E.2d 303, 304. As noted in *Crouch*, "it is fundamental in tort law that for liability to attach, there must be a duty owed to a plaintiff by a defendant." *Id.*, citing *Miller, supra*. Numerous courts, including the court in *Crouch*, have relied on a statement in Cooley, Torts, § 300 (4th Edition) in refusing liability:

> If the duty which the official authority imposed upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecution.

■ Before the City and Department can be held liable for negligence, it must be shown that they owed a duty to Lewis.

Absent a duty, there can be no breach of duty, hence no negligence or liability based upon a breach of duty. *State v. Flanigan* (1986), Ind.App., 489 N.E.2d 1216, *trans. denied; Wilson v. Haimbaugh* (1985), Ind. App., 482 N.E.2d 486. Whether such a duty exists is a question of law. *Flanigan, supra* at 1217.

■ Although no Indiana cases deal directly with the specific issue presented here, a number of cases decided by our courts are instructive. In *Simpson's Food Fair, Inc. v. City of Evansville* (1971), 149 Ind.App. 387, 272 N.E.2d 871, the court held that the City was not liable for the failure of the City Police to stop a wave of criminal activity which forced the store to go out of business. Likewise, a police department owes no special duty to a victim of a crime. *Crouch, supra.* In *Estate of Tanasijevich v. City of Hammond* (1978), 178 Ind.App. 669, 383 N.E.2d 1081, the court concluded that a special duty might exist when an individual's property was damaged in retaliation for his cooperation with a police investigation, but also noted that a request for police protection, pursuant to cooperation with an investigation, does not, alone, give rise to a special duty. In *City of Hammond v. Cataldi*, (1983), Ind.App., 449 N.E.2d 1184, Judge Staton for the court stated that a City's fire department owed no special duty in its attempt to extinguish a fire because it was made in response to its general duty to protect the safety and welfare of the public. *Id.* at 1188.

The facts here reveal a similar pattern. The City and Department owed a duty to the public in the discharge of their 911 responsibilities. There is nothing to show that Mrs. Lewis's deceased husband had any special relationship with the City or the Department giving rise to a special, individualized duty on the defendants' part toward Mr. Lewis. The trial court properly

---

**3.** We note that the legislature in 1988 adopted an amendment to the immunity statute providing immunity for "development, adoption, implementation, operation, maintenance, or use of an enhanced emergency telephone system" IND.

CODE 34–4–16.5–3(17). Based on binding precedent regarding the question of a public body's duty to an individual and the absence of legislative history to this amendment, we do not

granted summary judgment.[4]

Judgment affirmed.

RATLIFF, C.J., and STATON, J. concur.

read the amendment as a statement that a duty existed prior to the amendment's adoption.

**4.** Other states have also found no special duty arising from a municipality's operation of a 911 system. *See Galuszynski v. City of Chicago* (1985), 86 Ill.Dec. 581, 131 Ill.App.3d 505, 475 N.E.2d 960 (plaintiff injured by 911 operator's slow dispatch of police failed to demonstrate a special duty); *Steiner v. City of Pittsburgh* (1986), 97 Pa.Cmwlth. 440, 509 A.2d 1368 (city not liable for possible negligence of 911 operator who allegedly ignored plaintiff's complaint); *Bokor v. City of Detroit* (1989), 178 Mich.App. 268, 443 N.W.2d 399, *appeal denied* (discussing a municipality's statutory immunity in the context of a 911 system's operation under facts remarkably similar to those here).

In a tragic case, the New York courts found a county and city did owe a special duty to a person using a 911 system. In *DeLong v. Erie County* (1982), 89 A.D.2d 376, 455 N.Y.S.2d 887, affirmed in *DeLong v. County of Erie* (1983), 60 N.Y.2d 296, 469 N.Y.S.2d 611, 457 N.E.2d 717, the appellate division and the court of appeals found Erie County and the City of Buffalo owed a special duty to a murder victim who had called 911 for assistance. The 911 operator failed to ask the caller's name and to verify her address. The operator then dispatched police to the wrong house number on a street with al-

most the same name as that where the victim resided. The 911 operator also told the victim that police would arrive "right away" and the victim waited. At the time of the call, the murderer had not yet entered the victim's home. The victim lived one-half block from a police station, and had she called that station assistance could have arrived in less than 60 seconds. After the victim was stabbed, a neighbor called the local police station, and police did indeed arrive within 60 seconds.

In affirming the appellate division's decision, the court of appeals relied on Judge Cardozo's statement that:

> [i]f conduct has gone forward to such a stage that inaction would commonly result, not negatively merely in withholding a benefit, but positively or actively in working an injury, there exists a relation out of which arises a duty to go forward.

*Id.*, 60 N.Y.2d at 305, 469 N.Y.S.2d at 616, 457 N.E.2d at 721 (citations omitted).

As we have stated in the text, the facts here give rise to no such duty as found in *DeLong*. Mr. Lewis's stepdaughter, Vanessa, was not lulled into inaction by the 911 operator, whom she never reached. Moreover, when Vanessa's grandmother reached a 911 operator, assistance was immediately dispatched to the correct address. We do not find the rule enunciated in *DeLong* to be one of general applicability.