**CITY OF GARY, Indiana,**
**Appellant–Defendant,**

v.

**Katie B. ODIE, Administratrix of the**
**Estate of Eddie Odie, Jr., Deceased,**
**Appellee–Plaintiff.**

No. 64A04–9306–CV–225.

Court of Appeals of Indiana,
Fourth District.

Aug. 24, 1994.

Gilbert King, Jr., Gary, for appellant.

James T. Walker, James T. Walker Professional Ass'n, Merrillville, for appellee.

RILEY, Judge.

In this suit for damages brought by the Estate of Eddie Odie, the jury found the Defendant–Appellant the City of Gary, Indiana (Gary), liable for negligent response to Katie Odie's calls for emergency assistance made on the 911 number established and serviced by Gary. Gary brings this appeal and raises one restated issue for our review:[1] Did the trial court err in determining that the City of Gary owed a private duty to Eddie Odie?

## FACTS

The facts most favorable to the judgment reveal that shortly after 4:00 a.m. on August 14, 1988, Eddie Odie got out of bed to let his dog into the house. When he returned to bed he experienced breathing difficulties. At 4:07 a.m., Katie Odie dialed 911 and told the dispatcher that her husband could not "catch his breath" and asked for an ambulance to be sent. (R. 269). The dispatcher assured her that the ambulance was on its way. Katie Odie then called her neighbor, her sister, brother-in-law and niece, and Eddie Odie's daughter and grandson.

Shortly after her neighbor arrived, Katie Odie called 911 for the second time. Again she was assured that the ambulance was coming. When her sister arrived, Katie Odie called for a third time. A fourth call was made by Katie Odie's brother-in-law. Katie Odie made the fifth call and was assured that the ambulance would arrive momentarily. When she told the dispatcher that the ambulance still had not come, the dispatcher informed her in a discourteous tone that the ambulance was probably outside already. The ambulance arrived at 4:49 a.m., 42 minutes after Katie Odie's first call.

Katie Odie testified that she relied on the assurances of the dispatcher and had she known the length of time it would take for the ambulance to arrive, she would have taken her husband to the hospital by car.

At all times relevant to this claim, the City of Gary (Gary) was the exclusive operating authority of the Gary Fire Department Ambulance Service (Ambulance Service). On August 14, 1988, the Ambulance Service was short-staffed with only two of the four regular ambulance crews working. That night the supervisor ordered Ambulance Crew # 404 to station themselves on the northwest side of Gary at Fire Station # 9. Crew # 404 disregarded the order, stationing themselves on the south east side of Gary at Fire Station # 10. The Odies lived about a mile and a half from Fire Station # 9.

The dispatcher with whom Katie Odie spoke chose Crew # 404 to respond to the Odie call; however, when the Odie call first came in, the dispatcher could not find Crew # 404. When he located them at Firehouse # 10, they were asleep. One member of the crew answered the call and logged the response time as 4:35 a.m.; however, it took some time before the team was prepared to

---

1. In its Brief, Gary presents two additional issues; however, both issues assume that duty did not attach until the EMTs and paramedic arrived at Eddie Odie's home. Because we find that duty attached at an earlier time, these arguments are unavailing.

Gary's fourth issue challenges the degree of certitude required to establish that the decedent would have survived but for Gary's actions. It contends that the Estate's evidence offered to prove proximate cause more appropriately fits into the doctrine of loss of chance. Although we do not necessarily agree with Gary's assessment of the Estate's evidence, Gary's argument focuses on the Estate's inability to meet the threshold admissibility requirements pursuant to *Porter v. Whitehall Laboratories*, (1992), S.D.Ind., 791 F.Supp. 1335, 1342. Our review of the record reveals that Gary failed to object to the admissibility of the Estate's witnesses or their qualifications as experts, and has, thus, waived this issue for our review. *Clouse v. Fielder* (1982), Ind. App., 431 N.E.2d 148, 154.

leave the station.[2] At the time of Katie Odie's call, other ambulance crews were available to respond. The average response time for Gary and Northwest Indiana reporting region in 1988 was approximately six minutes; cardiac care time parameters for basic life support was four to six minutes and for advanced life support was eight minutes.

When the ambulance arrived at the Odies' home, the EMTs failed to promptly assess Eddie Odie's condition, failed to promptly call for the assistance of a paramedic who could provide more definitive care, and failed to promptly initiate CPR. Eddie Odie arrived at St. Mary's Medical Center at 5:29 a.m.; he died at 5:45 a.m. of congestive heart failure, pulmonary edema, and cardiac arrest.

Katie Odie, as administratrix of the estate of Eddie Odie, Jr. (Estate), instituted a wrongful death claim against Gary, on November 10, 1989.[3] On January 27, 1992, Katie Odie moved for leave to file an amended complaint which added a second count of intentional infliction of emotional distress as a separate cause of action. This was allowed by the trial court. On January 28, 1993, Gary filed its answer to the amended complaint which included the affirmative defense of governmental immunity under Indiana's Tort Claims Act, IND.CODE 34-4-16.5-1, et seq.

In a pre-trial order, the dispute over Gary's immunity defense was resolved by stipulation that the defense would be permitted only as to the second count of the amended complaint which was dismissed at the close of the Estate's case. On February 26, 1993, after a jury trial, the court entered judgment on the jury's verdict in favor of the Estate.

Gary appeals.

**2.** The time of Katie Odie's first call was hotly disputed at trial with Gary contending that the call came in at 4:35 a.m. The time of the calls could not be verified by the automated taping system which time records all fire department dispatch communications because Gary did not preserve the original, a copy, or a transcript of the recording.

## DISCUSSION

In light of the elimination of governmental immunity pursuant to the Indiana Tort Claims Act as a defense, the Estate was required to prove the traditional elements of actionable negligence in order to prevail. *But see Crouch v. Hall* (1980), Ind.App., 406 N.E.2d 303, 304 (discussing the lack of clarity in the distinction between immunity analysis and duty analysis). In order to recover damages, the Estate had the burden of establishing: (1) a duty owed by the defendant to conform its conduct to a standard of care necessitated by its relationship with the decedent; (2) a breach of that duty; and (3) an injury proximately caused by the breach. *Greathouse v. Armstrong* (1993), Ind., 616 N.E.2d 364, 368.

We address the issues raised by Gary keeping in mind our standard of review: the trial court's judgment will be affirmed if sustainable on any theory or basis found in the record on appeal. *Kellogg v. City of Gary* (1990), Ind., 562 N.E.2d 685, 691.

Gary contends that it did not owe a duty to Eddie Odie beyond the general duty owed to all members of the public. Specifically, it argues that there was insufficient contact between Eddie Odie and the Ambulance Service to create a private duty.

The duty to exercise care for the safety of another arises as a matter of law out of a relationship which exists between the parties, and it is the province of the court to determine whether a relationship gives rise to a duty. *Greathouse*, 616 N.E.2d at 368; *Webb*, 575 N.E.2d at 995. Factual questions may be interwoven with the determination of the existence of a relationship, rendering the existence of a duty a mixed question of law and fact, ultimately to be resolved by the

**3.** In its answer, filed on November 30, 1989, Gary failed to raise any affirmative defense. The Tort Claims Act, amended effective July 1, 1988, provided immunity for "development, adoption, implementation, operation, maintenance, or use of an enhanced emergency telephone system." I.C. 34-4-16.5-3(17).

fact-finder. *Gary Police Dept. v. Loera* (1992), Ind.App., 604 N.E.2d 6, 7.

Generally two types of duty, public and private, can arise in situations similar to the case at bar. *Id.* at 8. If the duty which an official authority imposes upon its agent is a duty to the public, a failure to perform it, or an inadequate or erroneous performance is a public injury and must be redressed in some form of public prosecution. *Id.* However, to ensure responsibility and the utmost protection possible within limited means, a municipality must be accountable for its negligence to some degree. *City of Rome v. Jordan* (1993), 263 Ga. 26, 426 S.E.2d 861, 863. Thus, if the duty is a duty to an individual, then the neglect to perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages. *Id.* The plaintiff has the burden of establishing that a private duty between himself and the official entity arose, entitling him to recover for the breach of that duty. *Greathouse,* 616 N.E.2d at 368; *Lewis v. City of Indianapolis* (1990), Ind.App., 554 N.E.2d 13, 16, *trans. denied; See also Crouch,* 406 N.E.2d at 304.

A private duty must be particularized to an individual. *Simpson's Food Fair v. City of Evansville* (1971), 149 Ind.App. 387, 391, 272 N.E.2d 871, 874. In specific circumstances, a governmental entity or agent can, by its conduct, narrow an obligation which it owes to the general public into a special duty to an individual. *Tanasijevich v. City of Hammond* (1978), 178 Ind.App. 669, 383 N.E.2d 1081, 1084 (citing *Massengill v. Yuma County* (1969), 104 Ariz 518, 523, 456 P.2d 376, 381). Thus, before Gary can be held liable for negligence, the Estate must show that the Ambulance Service or its dispatcher owed a private duty to Eddie Odie. Absent a duty, there can be no breach of duty, and no negligence or liability based on the breach of duty. *Lewis,* 554 N.E.2d at 16.

Courts throughout the United States have had difficulty defining the exact nature of the private duty and when Indiana courts have considered the concept, they generally have not found it. *See Greathouse,* 616 N.E.2d at 368–69 (sheriff's department owed no private duty to motorcyclist simply because cattle escaped onto a highway and sheriff attempted to contact cattle's owner); *State v. Flanigan* (1986), Ind.App., 489 N.E.2d 1216, 1219, *trans. denied* (police did not owe a private duty to provide traffic control so that pedestrians walking along a highway could walk in safety); *City of Hammond v. Cataldi* (1983), Ind.App., 449 N.E.2d 1184, 1188 (fire department did not owe special duty to victims of a fire in its attempt to extinguish the fire because it was made in response to its general duty to protect the safety and welfare of the public); *Crouch,* 406 N.E.2d at 304 (police did not owe special duty to the estate of a rape victim to investigate the rape of a third party and thereby help prevent the rape and murder of the victim); *Simpson's Food Fair,* 149 Ind.App. at 393, 272 N.E.2d at 875 (city was not liable for failure of the police to stop a wave of criminal activity which forced store to close). However, the concept of a private duty owed by a public entity to individuals has eroded the doctrine of immunity. Indeed, in a discussion about exceptions to the governmental doctrine where a private duty exists, Judge Sullivan stated: "The presence of the amorphous and ill-defined duty owed by government to the public as a predominating factor which insulates government from tort responsibility is giving way to consideration of a more fundamental duty owed to private individuals." *Simpson's Food Fair,* 149 Ind.App. at 391, 272 N.E.2d at 873–84.

Recently, two cases from this court have considered whether a private duty existed. In *Mullin v. City of South Bend* (1993), Ind.App., 618 N.E.2d 42 *reh'g denied,* we found that the city was not in a special, individualized relationship with a homeowner and his children, thus did not owe them a special duty to dispatch a paramedic unit to a house fire in response to a call on the 911 emergency system, even though the dispatcher was informed of the address of the

fire and the names of the home's residents. The request for aid had come from the victims' neighbor.

Likewise, in *Loera*, 604 N.E.2d 6, we found that a private duty did not exist. In that case, an unknown police officer stopped at the scene of an accident and told the people involved that he was going off duty but would send another officer to the scene. *Id.* at 7. The plaintiff was driving down the same stretch of highway, and collided with the car from the first accident. Because the unknown police officer never met the plaintiff and did not and could not have known that he would be traveling the same stretch of highway, we found that the city did not owe a private duty to the plaintiff. *Id.* at 8.

The cases cited above stand for the majority position that liability to an individual for damages will not lie where the officer or city simply owes a duty to the public generally. *Loera*, 604 N.E.2d at 8. A common thread through all of these cases is the lack of direct, personal contact between the plaintiffs and the government entity or agent upon which the special duty relationship depends.

This absence of personal contact was emphasized in another case from this court, *Lewis*, 554 N.E.2d 13, in which evidence did not reveal that the deceased had any special relationship with the city giving rise to an individual duty towards the deceased. *Id.* at 16. The deceased's wife dialed 911 three times but the calls were not answered. *Id.* at 14. A fourth call, made by another person, did reach the emergency service. *Id.* The estate contended that the ten minute delay in medical assistance contributed significantly to the decedent's death three months later. *Id.*

Judge Sullivan suggested in a footnote in *Lewis*, that although the facts before him did not rise to level necessary to find a private duty, there were circumstances in which a private duty could be found.

In a tragic case, the New York Courts found a county and city did owe a special duty to a person using a 911 system. In *DeLong v. Erie County* (1982), 89 A.D.2d 376, 455 N.Y.S.2d 887, *affirmed in DeLong v. Erie County* (1983), 60 N.Y.2d 296, 469 N.Y.S.2d 611, 457 N.E.2d 717, the appellate division and the court of appeals found Erie County and the City of Buffalo owed a special duty to a murder victim who had called 911 for assistance. The 911 operator failed to ask the caller's name and to verify her address. The operator then dispatched police to the wrong house number of a street with almost the same name as that where the victim resided. The 911 operator also told the victim that police would arrive "right away" and the victim waited. At the time of the call, the murderer had not yet entered the victim's home. The victim lived one-half block from a police station, and had she called the station assistance could have arrived in less than 60 seconds. After the victim was stabbed, a neighbor called the local police station, and police did indeed arrive within 60 seconds.

In affirming the appellate division's decision, the court of appeals relied on Judge Cardozo's statement that:

> [i]f conduct has gone forward to such a state that inaction would commonly result, not negatively merely in withholding a benefit, but positively or actively in working an injury, there exists a relation out of which arises a duty to go forward.
>
> *Id.;* 60 N.Y.2d at 305, 469 N.Y.S.2d at 616, 457 N.E.2d at 721 (citations omitted).

As we have stated in the text, the facts [in *Lewis*] give rise to no such duty as found in *Delong*. Mr. Lewis's stepdaughter, Vanessa, was not lulled into inaction by the 911 operator, whom she never reached. Moreover, when Vanessa's grandmother reached the 911 operator, assistance was immediately dispatched to the correct address. We do not find the rule enunciated in *DeLong* to be one of general applicability.

*Lewis*, 554 N.E.2d 17 n. 4.

Further, Indiana courts have found that a private duty does exist under circumstances

which do not involve the 911 emergency service. In *Tanasijevich*, 178 Ind.App. 669, 383 N.E.2d 1081, Judge Staton found, with two judges concurring in result, that a special duty might exist when an individual's property was damaged in retaliation for his cooperation with a police investigation, but noted that a request for police protection, pursuant to cooperation with an investigation, does not, alone give rise to a special duty. *Id.* at 674, 383 N.E.2d at 1085. Likewise, in *Simpson's Food Fair*, 149 Ind.App. 387, 272 N.E.2d 871, Judge Sullivan, lacking controlling Indiana precedent concerning the distinction between public and private duty, pointed out examples from other jurisdictions in which a special duty arose to an individual based on the nature of the relationship between police and a citizen. *Id.* at 389, 272 N.E.2d at 873. He especially noted *Schuster v. City of New York* (1958), 5 N.Y.2d 75, 80, 180 N.Y.S.2d 265, 269, 154 N.E.2d 534, 537, which held that the city owed a special duty to use reasonable care for the protection of a person who collaborated with it in the arrest of criminals, once it reasonably appeared that the collaborator was in danger due to the collaboration. Beyond the personal contact between the police and the collaborator, the court emphasized the policy of encouraging citizens to aid and cooperate with police.

Gary urges us to adopt specific criteria, like that of Illinois, for determining the existence of a private duty. In Illinois, the court looks to see if (1) the municipality is uniquely aware of the particular danger or risk to which plaintiff is exposed; (2) there are allegations of the municipality's specific acts or omissions; (3) the specific acts or omissions are either affirmative or willful in nature; and (4) the injury occurred while the plaintiff was under the direct and immediate control of the employees or agents of the municipality. *See Galuszynski v. City of Chicago* (1985), 131 Ill.App.3d 505, 507, 475 N.E.2d 960, 962 *appeal denied.* Applying this analysis to the case at bar, a private duty could not arise until after the ambulance had arrived at the Odie home.

The Illinois criteria and the cases in which it is employed reflect the Illinois governmen-

tal tort immunity act and the Illinois decisional law regarding the "special relationship" exemption to the immunity afforded therein. It was not written with an eye toward the Indiana Tort Claims Act or our controlling case law, and Gary offers no compelling reason why we should adopt the Illinois standard. Further, Gary fails to note that the Illinois tort immunity act and the four-part "special relationship" test was found to be inapplicable to a city's 911 emergency system because that system is not a police protection service, instead a city is liable under a standard of willful and wanton misconduct under another Illinois statute. *Barth v. Board of Eduction* (1986), 141 Ill. App.3d 266, 280, 490 N.E.2d 77, 86; *see Doe v. Calumet City* (1992), 182 Ill.Dec. 155, 163, 609 N.E.2d 689, 697. Thus, we decline to adopt the Illinois criteria; however, we agree with Gary that the adoption of some criteria would serve as a useful guide both for our review and for trial courts.

A perusal of the law of other state jurisdictions reveals that the New York courts have considerable experience in applying both the public duty rule and its special duty exception. The New York Court of Appeals has delineated a narrow class of cases in which they have recognized an exception to the general rule of municipal immunity based on the "special relationship" between the municipality and the claimant. *DeLong*, 60 N.Y.2d at 304, 469 N.Y.S.2d at 616, 457 N.E.2d at 721. In order to find a special relationship, a plaintiff must prove: (1) an explicit assurance by the municipality, through promises or actions, of an affirmative duty to act on behalf of the injured party; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking. *Cuffy v. City of New York* (1987), 69 N.Y.2d 255, 260, 513 N.Y.Supp.2d 372, 375, 505 N.E.2d 937, 940; *see Shinder v. New York* (1984), 62 N.Y.2d 945, 946, 479 N.Y.S.2d 189, 189, 468 N.E.2d 27, 27; *Sorichetti v. City of New York* (1985),

65 N.Y.2d 461, 469, 492 N.Y.Supp.2d 591, 596, 482 N.E.2d 70, 75.

Commenting about the four-element test, the court in *Cuffy,* stated:

> the injured party's reliance is as critical in establishing the existence of a "special relationship" as is the municipality's voluntary affirmative undertaking of a duty to act. That element provides the essential causative link between the "special duty" assumed by the municipality and the alleged injury. Indeed, at the heart of most of these "special duty" cases is the unfairness that the courts have perceived in precluding recovery when a municipality's voluntary undertaking has lulled the injured party into a false sense of security and has thereby induced him either to relax his own vigilance or to forego other available avenues of protections. On the other hand, when the reliance element is either not present at all or, if present is not causally related to the ultimate harm, this underlying concern is inapplicable, and the invocation of the "special duty" exception is then no longer justified.

*Cuffy,* 69 N.Y.2d at 260, 513 N.Y.S.2d at 375, 505 N.E.2d at 940 (citations omitted); *see also DeLong,* 60 N.Y.2d at 305, 469 N.Y.S.2d at 616, 457 N.E.2d at 721 ("[M]ost significantly, the victim's plea for assistance was not refused. Indeed she was affirmatively assured that help would be there 'right away'. Considering the fact that she was merely a block and a half from the local police station, and was not yet at the mercy of the intruder, it cannot be said as a matter of law that this assurance played no part in her decision to remain in her home and not seek other assistance. Unfortunately, it only increased the risk to her life.").

Commenting on the direct contact between the municipality's agent and the injured party, the court in *Cuffy* found:

> This element, which is conceptually related to the reliance element, exists first as a natural corollary of the need to show a "special relationship" between the claimant and the municipality, beyond the relationship with government that all citizens share in common. In addition, the "direct contact" requirement serves as a basis for rationally limiting the class of citizens to whom the municipality's "special duty" extends.
>
> As a rule based partially on policy considerations, the direct contact requirement has not been applied in an overly rigid manner.... [T]he proper application of the "direct contact" requirement depends on the peculiar circumstances of each case, all of which must be considered in light of the policies underlying the narrow "special duty" exception.

*Id.* at 261, 513 N.Y.S.2d at 375, 505 N.E.2d at 940–41 (citations omitted). Thus, the *Cuffy* court found that there was direct contact when a wife and child were injured by neighbors after the husband had received a promise from police that they would provide protection for the family; however, a second child who was only visiting at the family home at the time of the incident, could not rely on the assurances of protection from police officers given to his father. *Id.,* 513 N.Y.S.2d at 376, 505 N.E.2d at 941; *See also Sorichetti,* 65 N.Y.2d at 471, 492 N.Y.S.2d at 598, 482 N.E.2d at 77 (court allowed recovery for an infant's injuries when the infant's mother had direct contact with police because of the close relationship between the interests of the mother and child, as well as a preexisting judicial order of protection initiated solely for the purpose of protecting the child); *but see Jordan,* 426 S.E.2d at 864 (no special relationship existed between municipality and victim where victim was not aware that police had promised her sister-in-law that they would send police car to victim's house).

■ Our review of Indiana case law indicates that in order to prove the existence of a private duty there must be both personal contact, beyond a simple request for protection or aid, and some additional factor. One of the additional factors suggested by our decisions is the reliance upon the promise of aid which lulls the victim into inaction. In order to facilitate the analysis of a special duty claim in both the trial court and on review, we adopt the principles enunciated in

*Cuffy* for application in cases in Indiana wherein a special duty is alleged.[4] We believe that these principles are well-suited to the Indiana Tort Claims Act and our case law.

Considering the case at bar, the record reveals that Katie Odie called the 911 emergency number four times from 4:07 a.m. until 4:35 a.m. on the morning of her husband's death, and told the dispatcher that her husband was experiencing trouble breathing. This satisfies the third element of the analysis, that of direct contact, and the second element of the analysis, that the dispatcher knew that inaction could lead to harm. Each of the calls were answered by the dispatcher on duty who gave assurances to Katie Odie that an ambulance was on its way. This satisfies the first element of the analysis that the municipality assumed an affirmative duty to act on Eddie Odie's behalf. Katie testified that had she known that help was not immediately available either she or one of her relatives, who arrived at the house before the ambulance, could have transported Eddie Odie to the hospital. Thus, Katie was lulled into inaction by the 911 dispatcher's continued assurances that the ambulance would arrive and those assurances deprived Eddie of assistance that reasonably could have been expected from other sources. The average response time for Gary at that time was six minutes, 36 minutes less than the time it took for the ambulance to arrive at the Odie's home. This satisfies the final element of the analysis, that of reasonable reliance of the victim.

The trial court was correct in determining that the Estate demonstrated a relationship between the decedent and Gary giving rise to a special duty. Thus, we affirm the judgment of the trial court.

Judgment affirmed.

CHEZEM and BAKER, JJ., concur with separate opinions.

CHEZEM, Judge, concurring.

I concur with the majority. However, I believe that the majority's great reliance on the law of other states' is unnecessary. Precedent in Indiana law supports the majority's opinion.

In recent years, our supreme court has increasingly limited governmental immunity from tort liability. For example, in *Quakenbush v. Lackey* the court held that law enforcement officers are liable for the breach of private duties owed to individuals, but are immune from liability for the breach of public duties owed to the public at large. (1993), Ind., 622 N.E.2d 1284, 1291.

Additionally, as briefly mentioned by the majority, in *Greathouse v. Armstrong,* the court similarly held that the duty breached must be private in order for a county sheriff's office to be liable. (1993), Ind., 616 N.E.2d 364, 368. In *Greathouse,* the court reiterated the three elements of actionable negligence from *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992. These elements are: (1) a duty owed by the defendant to conform its conduct to a standard of care necessitated by its relationship with the decedent; (2) a breach of that duty; and, (3) an injury proximately caused by the breach. *Greathouse* 616 N.E.2d at 368 (citing *Webb* ).

After considering the facts of this case and applying existing Indiana case law, I concur.

BAKER, Judge, concurring.

I concur with the majority's analysis and discernment of "private duty" in Indiana. I note that we reach the issue of duty only because of Gary's failure to plead the affirmative defense of governmental immunity with regard to the wrongful death claim.

---

4.  Other jurisdictions have also adopted this analysis to determine if a special relationship or duty has arisen permitting a claim against a municipality. *See Sawicki v. Ottawa Hills* (1988), 37 Ohio St.3d 222, 232, 525 N.E.2d 468, 478; *Braswell v. Braswell* (1991), 330 N.C. 363, 410 S.E.2d 897, 902–03 *reh'g denied; Wolfe v. City of Wheeling* (1989), 182 W.Va. 253, 387 S.E.2d 307, 312.

In addition, some jurisdictions have adopted two or three prong tests in line with the *Cuffy* analysis. *See Chambers–Castanes v. King County* (1983), 100 Wash.2d 275, 286, 669 P.2d 451, 458; *Platt v. District of Columbia* (1983), D.C.App., 467 A.2d 149, 151; *Jordan,* 426 S.E.2d at 863; *Williams v. State* (1983), 34 Cal.3d 18, 25, 664 P.2d 137, 141, 192 Cal.Rptr. 233, 237.

Had Gary pled the defense, I.C. § 34–4–16.5–3(17) would have provided it with immunity.