Danny PLUMMER and Jackie Plummer, as Custodial Parents of Jamie Plummer, Deceased, Appellants–Plaintiffs,

v.

BOARD OF COMMISSIONERS OF ST. JOSEPH COUNTY, Indiana and St. Joseph County Parks Department, Appellees–Defendants.

No. 71A03–9410–CV–384.

Court of Appeals of Indiana.

July 26, 1995.

Transfer Denied Jan. 11, 1996.

520

Daniel H. Pfeifer, Jeffrey J. Stesiak, Sweeney, Pfeifer & Anderson, South Bend, for appellants.

William T. Webb, Robert D. Lee, Hardig, Lee and Groves, P.C., South Bend, for appellees.

## OPINION

HOFFMAN, Judge.

Appellants-plaintiffs Danny Plummer and Jackie Plummer, as custodial parents of Jamie Plummer, deceased, (collectively "Plummers") appeal from the granting of summary judgment in favor of appellees-defendants St. Joseph County, Indiana and St. Joseph County Parks Department (collectively "St. Joseph") in a wrongful death action. The designated facts are summarized below.

On June 12, 1992, Jamie Plummer was swimming with some friends at Ferrettie/Baugo Creek lake located in St. Joseph County, Indiana. Pam Hardt, Sara Stahl, and Tom Jester were the lifeguards on duty at the lake.

In the early afternoon, while Jamie was swimming with his friend, Chris Templeton, he became imperiled. Hardt heard Templeton yelling, noticed bubbles in the water near where Jamie was, and determined that a drowning was occurring. Hardt immediately blew her whistle and summoned the assistance of the other lifeguards. Hardt was the first to reach the area where Jamie was last seen swimming and to begin surface dives to locate him. After Stahl and Jester cleared the water of other swimmers, they too joined in the rescue attempt, along with Elizabeth Gould who had just arrived for work. The lifeguards formed "life-chains"[1] to locate Jamie. After several "life-chains" were formed, his body was discovered. Thereafter, although both the lifeguards and the authorities made repeated attempts to revive him, he died.

Based on the above, the Plummers filed a complaint against St. Joseph in the St. Joseph Superior Court on December 21, 1992, alleging *inter alia* negligence in Jamie's rescue and the County's failure to maintain its facilities in a safe condition. On November 12, 1993, St. Joseph filed a motion for sum-

mary judgment, which the trial court granted on July 5, 1994. This appeal ensued.

On appeal, the Plummers raise one consolidated issue: whether the trial court erred in granting summary judgment in favor of St. Joseph.

As of January 1, 1991, amendments to Ind. Trial Rule 56(C), the parties to a summary judgment proceeding must expressly designate to the trial court evidentiary matter which supports their respective positions. T.R. 56(C) provides:

"*At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. A party opposing the motion shall also designate to the court each material issue of fact which that party asserts precludes entry of summary judgment and the evidence relevant thereto . . . .*"

(Emphasis added.) T.R. 56(C). Summary judgment is appropriate only when the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. T.R. 56(C).

St. Joseph raises various arguments regarding both its own and the Plummers' attempts at designation. Because the purpose of the amendments to T.R. 56 are to decrease the amount of evidentiary material trial courts are required to sift through in ruling on summary judgment motions, *Pierce v. Bank One–Franklin, NA* (1993), Ind.App., 618 N.E.2d 16, 19, *trans. denied,* neither the trial court nor this Court on appeal can look beyond the evidence specifically designated to the trial court. *Midwest Commerce Banking Co. v. Livings* (1993), Ind.App., 608 N.E.2d 1010, 1012. Even though T.R. 56(C) is silent as to the specificity required for designations, this Court in *Pierce* explained that a proper designation consists of: (1) a list of the factual matters which are or are not in dispute, (2) supported by a *specific*

---

1. During a "life-chain," the lifeguards line up facing the same direction, count to three, dive under, looking for the imperiled swimmer. When the lifeguards resurface, they repeat the process repositioned at the location of the lifeguard swimming the least distance.

designation to their location in the record, and (3) a brief synopsis of why those facts are material. *Pierce* at 19. Moreover, designating pleadings, discovery material, and affidavits in their *entirety* fail to meet the specificity required under the rule. *Intelogic v. Merchants Nat. Bank*, (1993), Ind.App., 626 N.E.2d 839, 842 at f.n. 4, *trans. denied.* Here, although both parties designated entire portions of the record in their respective motion and responses, more detailed references to the record were provided in the accompanying memoranda. It is from this designated evidence that a review will be conducted.

■ In Indiana, the elements of actionable negligence are: (1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff, (2) a failure by the defendant to conform his conduct to that standard and (3) an injury proximately caused by the breach of duty. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 995. However, when a duty owed by a governmental entity is a duty owed to the general public at large, it is not liable for negligence. *Mullin v. Municipal City of South Bend* (1994), Ind., 639 N.E.2d 278, 283. The governmental entity is liable for its negligence only when the duty owed to the plaintiff is one that gives rise to a private duty owed to a particular individual. *Id.*

In *Mullin*, a neighbor called 911 when the neighbor discovered plaintiff's house was on fire. When the dispatcher asked if anyone was in the house, the neighbor responded, "I think so." The City of South Bend had a written policy that whenever persons are located in a burning home, an ambulance will be dispatched along with other emergency vehicles. No ambulance was dispatched until one of the fire units called for one at the scene. One of the plaintiff's children died; the other was injured.

■ In determining whether the trial court's grant of summary judgment in favor of South Bend was appropriate, the *Mullin* court clarified the above distinction between private and public duties. The court adopted the test established in *City of Rome v. Jordan* (1993), 263 Ga. 26, 426 S.E.2d 861, 863, requiring that in order to impose a private duty on a governmental defendant, the plaintiff must show:

"(1) an explicit assurance by the municipality, through promises or actions, that it would act on behalf of the injured party;

(2) knowing on the part of the municipality that inaction could lead to harm; and

(3) justifiable and detrimental reliance by the injured party on the municipality's affirmative undertaking."

The *Mullin* court held the plaintiff failed to show the existence of a private duty, so summary judgment for the city was appropriate. *Id.* at 285. The court reasoned there was no evidence that South Bend assured plaintiff an ambulance would be dispatched to the fire immediately. *Id.* Further, the court reasoned that since plaintiff could not show awareness of the city's policy, there could be no detrimental reliance on it. *Id.* The *Mullin* rule is stated in the conjunctive; thus, all three elements must be proven by the Plummers in order to establish that a private duty was owed to Jamie. *See id.* at 284.

In the present case, like the plaintiff in *Mullin*, the Plummers do not dispute that the lifeguards attempted to rescue Jamie. To this extent, the evidentiary matter designated by the parties discloses that: Hardt immediately initiated a rescue attempt upon hearing Templeton and seeing bubbles in the water where Jamie was; the other lifeguards promptly joined in the attempt and initiated "life-chains" to locate him; two to five minutes elapsed from the time Hardt realized Jamie was in trouble until he was actually found; CPR was performed on him promptly when it became possible to do so by the lifeguards; and the emergency crew did the same upon its arrival. The evidence further discloses that park authorities called 911 immediately and that paramedics arrived only a few minutes after Jamie was pulled from the water.

■ The Plummers acknowledge that the mere existence of rescue services does not, standing alone, create a private duty

upon a governmental entity to use such services to the benefit of a particular person. *See Food Fair v. City of Evansville* (1971), 149 Ind.App. 387, 394–95, 272 N.E.2d 871, 876. Despite this rule, the Plummers argue that the mere placement of lifeguards at the lake satisfies the requirements of *Mullin.* Specifically, they claim that by placing lifeguards at the lake, St. Joseph made a specific assurance to Jamie that they would react to save him in the manner in which they were trained, acknowledged that a tragedy could occur if the lifeguards failed to respond properly, and gave him a justifiable reason to believe that if he became imperiled, the lifeguards would respond properly.

None of these contentions support the establishment of anything more than a general duty of care. As our supreme court stated in *City of Evansville v. Blue* (1937), 212 Ind. 130, 139–140, 8 N.E.2d 224, 229,

> "The practice of providing artificial pools, or of preparing bathing beaches in natural lakes or streams, so as to induce children of the community to come to them, may well have for one of its purposes the protection of children from the perils of natural streams and water courses where water is of fluctuating depth and where there is a possibility of unsuspected currents and dangers from sudden depths. *There is some difficulty in concluding that, because a municipal corporation, in the public interest and for the protection of the young, furnishes them a place to swim, safer than a natural stream or lake, and furnishes some supervision or policing, and guards to protect against the danger of drowning, which is inherent in swimming, it should be held responsible for unfortunate accidents because it has gone but part way and not furnished complete protection against drowning. . . ."*

(Emphasis added.) The *Blue* decision confirms that a lifeguard does owe a duty to the public at large to help imperiled swimmers. *Blue,* 212 Ind. at 140–141, 8 N.E.2d 224. Also consistent with *Mullin,* the *Blue* decision recognizes that a duty to protect children against their own voluntary acts may arise out of contract, express or implied. *Id.* at 140, 8 N.E.2d 224.[2] A lifeguard is not, however, and cannot possibly be an absolute insurer of the safety of swimmers. *Id.* at 141, 8 N.E.2d 224. As St. Joseph points out, because the duty of a lifeguard is inherently public in nature and under *Mullin,* liability cannot be predicated upon a general duty; St. Joseph's mere placement of lifeguards at the lake does not alone serve to establish any *Mullin* requirement.

Next, in a more specific argument, the Plummers contend as did the plaintiff in *Mullin,* that the lifeguards failed to adhere to a St. Joseph policy requiring face masks be used in rescue searches. However, like the plaintiff in *Mullin,* the Plummers have not shown, by their designated evidence, Jamie's knowledge of any such policy. Hence, they cannot successfully establish that Jamie relied to his detriment on St. Joseph's failure to adhere to a policy requiring their use. *Mullin,* 639 N.E.2d at 285. They offer no other evidence to show the existence of a contract, express or implied, giving the lifeguards a heightened and individual responsibility for Jamie's complete safety. *Blue,* 212 Ind. at 140, 8 N.E.2d 224. Having failed to meet the last requirement of *Mullin,* the Plummers have not shown a special duty was owed to Jamie by St. Joseph. As St. Joseph is immune from liability, the other elements of negligence need not be addressed.

The trial court properly granted summary judgment in favor of St. Joseph. There being no error, the decision of the trial court is affirmed.

Affirmed.

STATON and RUCKER, JJ., concur.

---

**2.** Contrary to the Plummers' assertions, a private duty does not arise solely from the fact that a fee was charged to Jamie to use the lake. *See Cain v. Bd. of Com'rs of Cass County* (1986), Ind.App., 491 N.E.2d 544, 548.